JAMES A. WADE, executor, &c., plaintiff in error, vs. DAVID S. JOHNSTON, defendant in error.

As a general rule, when an article can be removed without essential injury to the freehold, or the article itself, it is a chattel, and not a fixture. This criterion, as to what is or is not a fixture, is subject to qualification, and may be controlled by the agreement of the parties, or established custom and usage.

Claim, from Morgan county.   Decided by Judge HARDEMAN, March Term, 1858.

The defendant in error in this case filed his claim, alleging that he was the owner of certain machinery and property appertaining to the "Madison Steam Mill," which had been levied on by virtue of a mortgage *fi. fa.* from the Inferior Court of Morgan county, in favor of James A. Wade, as executor of Hudson Wade, deceased.

When the case came on for trial, the plaintiff in execution having given in evidence his execution, under which the levy was made, the mortgage and judgment of foreclosure, upon which the said execution issued, introduced as a witness,

*Leroy M. Wilson*, who testified, that he was in the employ of the Madison Steam Mill Company, for some time previous to, and on the 25th of April, 1855.   The Madison Steam Mill Company was then in possession of the property claimed, and had been in possession of the same for some time previous to that time; was present at the sale of the property in March, 1856, when claimant purchased the property. Previous to the sale, notice was given that the property was sold subject to various mortgages, the whole amounting to near $20,000; the names of the mortgagees were stated, and the amount of each mortgage; the plaintiff's mortgage was one of them; the claimant bid off the property at $126, subject to the mortgages; the property was not produced at the sale, nor was the machinery sold by itself, but the whole of the property, including the factory building, land, and all the machinery in the building, was sold in a lump.

Wade, ex'or, vs. Johnston.

With reference to the machinery, the witness stated, that the spinning frames all stood on the floor by their own weight and were not fastened at all; the cards stand in the same way; the two drawing frames were held by small screws, through an opening in the foot of the frames; the speeders, and also the wool cards, stood upon the floor, and were not fastened at all; the iron railing of the wool mule was fastened to the floor by screws; the balance of the mule was not attached at all, but stood by its own weight; the part that ran on the railing was moveable, and not attached to the building; the willower and pickers were not attached to the building at all; the looms were attached to the floor by screws, through an opening in the foot of the loom; the frame of the dressers was fastened to the floor, through a hole in the foot, by screws; the horizontal shafting was held by iron hangings; the hangings were held by bolts and screws to the joists; all the rest of the machinery, such as reels, ball winders, beaming machines, &c., stood on the floor, and were not fastened to the building in any way. When the machinery was in motion, leather bands connected the machinery with the shafting; when the machinery was not in motion, the bands were actually taken off; all the before mentioned machinery could be removed from the building without injury to the machinery or to the building; it was a common thing in this country to sell the machinery separate from the building, and to remove it from one building to another; the boilers were in a room adjacent to, but joined to the main building, and could not be removed without removing, to some extent, the masonry that surrounded them; the engine rested on a bed of granite, the bottom of the engine being about even with the top of the floor; the pipes which supplied the steam, were up near the ceiling, in the engine room; the pipes which supplied the engine with water from the well, ran under the floor, and were reached by removing some of the planks left loose for that purpose; the boilers, pipes and engines could all be removed without

injuring them or the building; the upright shaft was connected with the engine, and moved by bevel wheels; the horizontal shafting was connected with the upright shafting by bevel wheels; it was capable of being taken to pieces and removed without injury to the building; the corn mills were placed on a platform built on the floor, and driven by a band from the main shaft; they were braced to keep them steady, but could be removed without injury to themselves or to the building.

The claimant introduced as a witness, *J. Smith*, who testified, that the bottom of the engine was bolted down to the bed of granite, upon which it rested, with four iron bolts; that the engine, upright shafting, bevel wheels and balance wheel, weighed about twelve tons, and stated, that under the term of steam mill, in his (witness') opinion, was included the engine, the boilers, and shafting, and building; that when the whole machinery was in motion, the whole was connected together by bands; that he should say the term "The Madison Steam Mill" included the building, the boilers and engine, upright and cross shafting, together with all the machinery connected therewith, necessary to carry on the business of manufacturing.

The claimant gave in evidence, his deed from the Sheriff, executed after the purchase by him in 1856; and also the common law *fi. fas.* recited in said deed, and under which the sale was made.

Claimant insisted that all the before mentioned machinery were fixtures and real estate, and that the mortgage of the plaintiff in error having been foreclosed before a Justice of the Inférior Court, that judgment of foreclosure and the execution under it were void, as a mortgage of real estate could only be foreclosed in the Superior Court.

The plaintiff in error insisted that the machinery in question was personal property, and that therefore his mortgage was rightfully foreclosed by a Justice of the Inferior Court, and requested the Court so to charge the jury

This charge the Court refused to give, but on the contrary, charged the jury, " that the whole of the property aforesaid was real estate, and that as said mortgage had been foreclosed before a Justice of the Inferior Court, the judgment of foreclosure and the execution issued thereon were void, said foreclosure not being had or made by any Court having jurisdiction of the same.

The jury returned a verdict in favor of the claimant, and the plaintiff in error filed his bill of exceptions, saying that the Court erred,

1st. In deciding that all the property aforesaid was real estate.

2d. In deciding that said judgment of foreclosure, and the execution issuing upon the same, were void.

3d. In deciding that said mortgage, as to the property aforesaid, could not be foreclosed before a Justice of the Inferior Court.

Cone, for plaintiff in error.

Reese, contra.

By the Court.—Lumpkin, J. delivering the opinion.

The Madison Steam Mill Company mortgaged to the plaintiff in error, certain real estate, on which their factory was situated, and also included in the same mortgage, as personal property, various articles of machinery then in the building. The plaintiff in error foreclosed his mortgage upon the machinery, as personal property, before one of the Justices of the Inferior Court of Morgan county, and execution was issued upon said judgment of foreclosure, returnable to the Inferior Court of Morgan county. This execution was levied upon the machinery, and defendant in error interposed a claim to the same.

When the case came on for trial in the Superior Court, that Court decided that all the machinery, and every other species of property, embraced in the mortgage, was real es-

tate; and that as a mortgage upon real estate could only be foreclosed in the Superior Court, the judgment of foreclosure, and the execution issuing thereon, was void.

Upon these facts and the evidence set forth in the bill of exceptions, counsel for plaintiff in error insists, that the machinery and other property, mentioned in the mortgage as personal property, is personal property, and not fixtures and real estate, and this is the sole question in the case.

A previous adjudication of this Court, during the present Term, renders the discussion of the point made in this bill of exceptions entirely nugatory. It is not disputed but that the mortgage in this case covers all the personal propety, as well as the real estate, the factory building, engine, boilers, shafts and machinery; and the Court having sustained the validity of the mortgage, the question as to which Court is entitled to foreclose, becomes one of utter immateriality, so far as David S. Johnston, the claimant, is concerned. It may well be doubted, whether he had the right to contest the form of foreclosure. If the mortgagee is content, what is it to him whether the mortgage was foreclosed in one Court or the other? He swore that the property belonged to him, under and by virtue of his purchase at Sheriff's sale, and that was the issue he tendered. And I would respectfully submit, that in all cases of claim, the law should be so amended as to restrict the investigation to the claimant's title, if such be not the proper construction of the law as it stands. What right have third persons to intervene between creditor and debtor, provided the paramount title to the property be not in him? Such is the construction of the Alabama Courts upon a statute precisely similar to our own.

But waiving all this, inasmuch as the doctrine has been ably and thoroughly argued on both sides, as to what constitutes fixtures, the Court will declare its opinion upon the subject, not as between landlord and tenant, executor and heir, executor of the tenant for life and remainder-men; not as to agricultural property, but as applicable to mills and

manufactories. And the rule of the common law, as we understand and adopt it, may be summed up in a single sentence, and it is this : wherever the article can be removed without essential injury to the freehold, or the article itself, it is a chattel; otherwise, it is a fixture. This rule is recommended by its simplicity and definiteness. Depart from it, and we are at sea, without chart or compass. This rule, of course, may be controlled by the agreement of the parties, as well as by established usage or custom. And most of the exceptional cases to the foregoing rule, and which seem to conflict with it, will be found to arrange themselves under one of these heads.

Having no statute law upon the subject, an eloquent appeal has been addressed to this Court, to apply the common law, with enlightened and discriminating reason, to adapt it to the ever varying necessities and requirements of advancing civilization; that the wonderful developments made in manufactures at this day, demand such judicial construction ; that the common law is confessedly undergoing modifications, and that the tendency in this country, is to consider the land itself set apart for manufacturing purposes, the buildings erected on it to receive and contain the machinery, the boilers and engine used to generate steam, as a motive power, and the machinery itself, the important and efficient agent in the process, as constituting one great whole, and taking the distinctive character of the land upon which it rests; that this falls within and encourages the spirit of the age, and the development of this great branch of industry; and that Georgia should not lag behind in the race.

It is conceded that there are decisions which seem to favor these views. The weight of modern authority, however, is the other way ; and the common law rule is adhered to and enforced in reference to this species of property, in some of the principal manufacturing States of the Union. *Amos & Ferard on Fix's.* 3, 4, 5, 6, 7, 56, 58, 184 *et passim; 14 Mass. R.* 352 ; 17 *Johns.* 116; 20 *Wendell,* 636 ; 24 *Wendell,* 191;

10 *Barbour*, 157 ; 9 *Connecticut*, 63 ; 9 *East.* 215 ; 5 *Denio*, 337 ; 11 *Vermont*, 433 ; 3 *Blackford*, 111 ; 7 *ditto*, 469.

Had the later cases *concurred* in modifying the common law rule in the direction and to the extent contended for by the learned counsel for the defendant in error, this Court might be inclined to lend its ear more willingly to the appeal which has been made. But seeing that New York, Connecticut, and other Northern States, which have the largest amount of machinery in operation, have not been persuaded as to the wisdom of changing the common law rule, we may well pause before taking the step; and conclude, as we do, that the interference invoked would proceed better from the Legislature, which, in abolishing one rule, might substitute another equally certain and accurate.

Judgment reversed.