## William Manwaring v. Luman Jenison.

*Fixtures—No universal test by which to determine, in the abstract, the character of what is claimed to be—Mode of annexation or manner of use, not conclusive in all cases—Express or implied understanding of the parties concerned usually controlling—Mortgaging machinery in use in a mill on land owned by mortgagor, as personal property, severs it in law as between the parties--Creditors attaching the land acquire only debtor's interest—If mortgage duly filed, attachment subject thereto—Purchase of the land by the attaching creditors at execution sale, with notice of mortgage, gives them no new equities—Such attachment and execution levies made during life of first renewal affidavit are subject to mortgage lien— Which lien is unaffected by the execution sale made after second renewal although affidavit not filed within statutory time—Renewal affidavit—Sufficient if made by one of the mortgagees, giving name of mortgagor and amount claimed to be due, which constitutes mortgagees' interest in the property— Chattel mortgage to secure indorsers—Substituting their note, without waiting for protest, with mortgagor's consent, will not release mortgage lien—Mortgage sale—One of two mortgagees may purchase the property— Presence of his co-mortgagee, or purchase in joint names, unnecessary— Notice of sale— Under mortgage executed prior to 1879 amendment, providing for like notice as of constables' sales, is sufficient, if it describes and locates property, without giving date or amount of mortgage, or names of parties, there being but one mortgage on the property and it being duly filed—Power of sale—Must be strictly pursued, but nothing gained by insisting on technicalities the want of which has injured no one—Demand of such an execution purchaser who has converted the mortgaged property, unnecessary.*

December 28, 1873, Haven, Blake & Co. purchased a parcel of land in the village of Grandville, Kent County, Michigan, with a steam stave and heading mill thereon, erected by their vendors, and used by them for some years prior to such sale *exclusively* for the manufacture of staves and heading, which land was conveyed as *real estate.* The mill building cost about $1,500; was a two-story frame, shingled-roof structure, built for *use* on said land for the *purpose* aforesaid, to which *use* it was well adapted. It contained, at time of such purchase, one steam-engine, of between five and six tons weight, resting upon a foundation of wood, brick, and stone laid in mortar, and was securely fastened thereto; also two steam boilers, weighing about five tons each, resting upon a similar foundation, and arched over with brick work in such a manner as to necessitate the removal of the siding from a portion of the mill building in order to remove

| | |
|---|---|
| 61 | 117 |
| 64 | 491 |
| 65 | 575 |
| 61 | 117 |
| 71 | 467 |
| 61 | 117 |
| 84 | 638 |
| 61 | 117 |
| 86 | 110 |
| 61 | 117 |
| 90 | 430 |
| 61 | 117 |
| 91 | 414 |
| 61 | 117 |
| 101 | 303 |
| 61 | 117 |
| 112 | 185 |
| 61 | 117 |
| 127 | 50 |
| 61 | 117 |
| s27NW | 899 |
| 130 | 10133 |
| 130 | 7442 |

said boilers; also one smoke-stack, connected and used with said boilers; also one circle stave-cutting machine, weighing one and one-half tons, and one machine for dressing and circling heading, of about eight hundred pounds weight. Both of said machines were securely fastened down by bolts running through the floor and the timbers beneath, and were connected with the main shaft by belts, and operated by power furnished by the engine; all of said machinery was well adapted for use in said building.

January 16, 1875, Haven, Blake & Co. mortgaged said engine, boilers, smoke-stack, and machinery to plaintiff and one Jenison to secure them from loss on account of their indorsement of the mortgagors' note; said property was specifically described in the mortgage, and the machinery was further designated as being then in use in the aforesaid mill; the mortgage was filed in the proper township on the day of its date, and the note was taken up at maturity, without protest, by the indorsers giving their own note payable to the order of Haven, Blake & Co., which note was several times renewed, and finally the plaintiff—*one* of the indorsers—was obliged to pay $1900 thereon.

January 13, 1876, the mortgage was legally renewed, no change in the title to any of the property having taken place.

June 12, 1876, defendant and his copartner attached the land in question as real estate, and such proceedings were thereafter had as resulted in the recovery of a judgment by the attaching creditors *against* Haven, Blake & Co., on which they caused an execution to issue November 4, 1876, and a levy to be made thereunder on the attached property, November 18, 1876.

February 21, 1877, the chattel mortgage was again renewed, no change in the ownership of the land or mortgaged property having taken place, nor other encumbrance placed thereon, except said execution levy.

May 28, 1877, the land was sold *as real estate* on said execution, and bid in by the attaching creditors, who received the usual certificate of sale. Plaintiff was present at the sale, and notified *defendant* of his mortgage claim.

July 30, 1877, Haven, Blake & Co. having become insolvent and the mill being shut down, plaintiff seized the property covered by the chattel mortgage, the officer employed entering the mill and announcing such seizure, but not detaching or removing the property from the mill building.

August 11, 1877, after due notice, the property was sold at public auction, by virtue of such seizure and mortgage, to plaintiff, for the sum of $274.90.

September 19, 1878, the usual sheriff's deed was executed and delivered to the attaching creditors, who, in March, 1880, sold the chattel mortgaged property, which was still attached to the mill building, to Adolph Leitelt, who removed it to Grand Rapids, Michi-

gan, and used it in his business. The mill building, after such removal, did not exceed in value $200.

Plaintiff, claiming said property under the mortgage sale, brought suit for its value against the defendant, *one* of the attaching creditors, but without demanding the property or making any effort to possess himself of the same. He recovered judgment in the Kent circuit, the presiding judge finding, as matter of law, from the facts by him found, and which are here summarized, that plaintiff was the owner of the property by virtue of such mortgage sale.

The defendant, alleging that the facts found did not support the judgment, brought error, denying plaintiff's title to the property in suit for the following reasons:

1. The machinery was a part of the realty, hence not subject to chattel mortgage.

2. The *first* renewal affidavit was insufficient in not stating any amount as owing or unpaid upon the mortgage; and the second renewal was not in time, being filed February 21, 1877, after the expiration of one year from the filing of the first renewal affidavit.

3. The mortgage being given as an indemnity against loss by reason of the indorsement of the mortgagors' note, and the indorsers giving their own note in its stead without their liability being fixed by protest, their mortgage lien was thereby lost. The failure to protest the *first* note discharged them from all liability thereon, and the payment of the *new* note by plaintiff would not come under the terms of the mortgage.

4. Plaintiff could not execute the power of sale alone, it being made to the mortgagees jointly, and not severally.

5. The sale under the mortgage was void by reason of the insufficiency of the notice of sale in this:

*a*—It does not pretend to be by virtue of the mortgage.

*b*—It does not give the names of the mortgagors or mortgagees, the date, or any other means by which to identify the mortgage.

*c*—It does not claim to be given by order of or under any authority from the mortgagees, or either of them.

6. Plaintiff, being only one of the mortgagees, could not purchase at the sale.

7. If plaintiff claims the property as a mortgagee instead of a purchaser at the mortgage sale, he cannot recover without joining his co-mortgagee.

8. A demand of the property should have been made before suit.

The Court affirmed the judgment, and in passing upon the objections raised by defendant's counsel, *Held:*

1. That while there are many conflicting decisions in the books as to the dividing line between realty and personalty in cases where machinery has been affixed to mills and other buildings for use therein, most of the American authorities agree that the *intention* of the party affixing the machinery enters into the elements of each case.

That the *permanency* of the attachment, and its character in law, do not depend so much upon the degree of *physical* force with which the thing is attached, or the *manner* or *means* of its attachment, as upon the *motives* and *intention* of the party in attaching it; and if

such intention is that the attached articles shall *not* by such annexation become a part of the freehold, as a general rule they will not, the exception being where the subject or mode of annexation is such that the attributes of personal property cannot be predicated of the thing in controversy; as when it cannot be removed without practically destroying it, or when a part or the whole of the article is essential to the support of that to which it is attached.

That the rule in Michigan, as concisely stated by Campbell, C. J., in *Wheeler v. Bedell*, 40 Mich 696, is, "that there is no universal test whereby the character of what is claimed to be a fixture can be determined in the abstract. Neither the mode of annexation, nor the manner of use, is in all cases conclusive. It must usually depend on the express or implied understanding of the parties concerned."

2. Applying these rules to the *facts* in this case, and inasmuch as Haven, Blake & Co., at the time of executing the mortgage to plaintiff, could have made the machinery personal property by its mere removal from the building, such mortgaging—there being no intervening rights—amounted in law to such a severance, and made the articles mortgaged personal property as between them and the mortgagees.

*Held*, further, that the attaching creditors, as purchasers at the execution sale, are not *bona fide* purchasers of the land without notice of the rights of the plaintiff; that by their levy they acquired no greater interest in or lien on the property than the judgment debtors had; and that the question of good faith as purchasers at the execution sale does not arise, as there can be no claim of estoppel against either Haven, Blake & Co. or the plaintiff. Defendant was notified at time of sale of plaintiff's mortgage rights, and he acquired no new equities by such sale.

3. An affidavit for the renewal of a chattel mortgage, made by *one* of two mortgagees named in the mortgage, giving the names of the mortgagors and certifying that the sum of $1,275 is *claimed* by the affiant to be due thereon at the date of the affidavit, which sum constitutes the *interest* of the mortgagees in the property described in the mortgage, is sufficient under How. Stat. § 6196.[1]

---

[1] How. Stat § 6196.—": Every such mortgage shall cease to be valid, as against the creditors of the person making the same, or subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing of the same, or a copy thereof, unless within thirty days next preceding the expiration of the year, the mortgagee, his agent or attorney, shall make and annex to the instrument or copy on file as aforesaid an affidavit, setting forth the interest which the mortgagee has, by virtue of said mortgage, in the property therein mentioned; upon which affidavit the township or city clerk shall endorse the time when the same was filed: *Provided,* that such affidavit being made and filed before any purchase of such mortgaged property shall be made, or other mortgage received or lien obtained thereon in good faith, shall be as valid to continue in effect such mortgage, as if the same were made and filed within the period as above provided."

4. A chattel mortgage was filed Jan. 16, 1875, and properly renewed Jan. 13, 1876. June 12, 1876, an attachment was levied on the mortgaged property, and on November 18, 1876, a levy made thereon under an execution issued on a judgment recovered in the attachment suit. February 21, 1877, the mortgage was again renewed, and in May following a sale was had under the execution levy, at which the mortgagee was present and notified the purchaser of the property of his mortgage interest therein.

*Held*, in a suit brought by the mortgagee against such purchaser to recover the value of the mortgaged property that when the defendant acquired his attachment and execution lien the mortgage was *valid*, and he had constructive notice of plaintiff's rights thereunder; and that at time of the execution sale he had *both* actual and constructive notice; and that he must take his lien as it stood when he acquired it.

That the debt upon which he obtained judgment was not incurred during the time the mortgage was unrenewed, his judgment being rendered while the mortgage was in full force under the first renewal; and that he gained no element of good faith by the failure of the plaintiff to renew his mortgage in the statutory time, his rights being preserved under the exception to the statute.

5. The indorsers of commercial paper were secured against loss by the execution of a chattel mortgage by the makers of the note, on the maturity of which, without waiting for a protest, they took it up with their own paper payable to the order of the mortgagors. They afterwards renewed their note several times, but were finally obliged to pay the same.

*Held*, in a suit involving their rights under the mortgage, that it was not necessary for them to wait for the protest of the first note in order to keep their mortgage alive, but they had a right to pay the note in the manner stated and hold their mortgage security; that if they saw fit to thus change the character of their liability to the holder of the note, with the consent of the makers, no one else had any reason to complain.

6. One of two mortgagees has a right to purchase the mortgaged property at a sale thereof under the mortgage; and it is not necessary that both should be present and bid together, or that he should purchase in the names of both. There is no warrant for any such claim in How. Stat. § 6200. (See note, page 142.)

7. A notice of chattel mortgage sale failed to give the date or amount of the mortgage, or the names of the mortgagor and mortgagee. It described the mortgaged property, and fixed the place of sale at the mill in which it was located, and was sufficiently and properly posted. It did not appear that any one was misled by the notice, there being but one mortgage on the property described, and *that* was on file in the proper office.

*Held,* that any one seeing the notice, and wishing to bid on the property, could easily inform himself as to the identity of the mortgage, and that a sale under such a notice was not void.

8. A chattel-mortgage sale made prior to the amendment requiring a constable's notice of sale to contain the names of the parties to the suit (Laws of 1879, p. 145; How. Stat. § 6980), which mortgage provided for a like notice as is required by law for *constables'* sales, is not invalid by reason of the omission of the names of the mortgagors and mortgagees from the *notice* under which such sale was made.

9. While the power of sale in a chattel mortgage must be strictly pursued, it is only necessary that it be fairly executed, and there is nothing to be gained by requiring any technicalities the want of which has injured no one.

10. Where a purchaser at an execution sale of real estate has full notice of the claim of a mortgagee to the machinery in a mill on said land, under a mortgage given by the *owner* of the land and machinery *prior* to the execution creditor obtaining any lien under his execution, no demand is necessary before bringing suit for the value of the machinery which the execution creditor has converted to his own use. .

Error to Kent.    (Montgomery, J.)    Argued February 17, 1886.    Decided April 29, 1886.

Case.    Defendant brings error.    Affirmed.    The facts are stated in the opinion and summarized at commencement of head-notes.

*J. C. FitzGerald,* for appellant:

The machinery was, at the date of the chattel mortgage, a part of the realty, as found by the court: *Coleman v. Stearns Manufacturing Co.,* 38 Mich. 30–41; *Robertson v. Corsett,* 39 Id. 782; *Lyle v. Palmer,* 42 Id. 316–17; *Morrison v. Berry,* Id. 389–99; *Potter v. Cromwell,* 40 N. Y. 287; *McRea v. Cent. Nat. Bank,* 66 Id. 494; *Roberts v. Dauphin D. Bank,* 7 Harris, 71; *Pierce v. George,* 108 Mass. 82; and the mere fact that the owners of the real estate mortgaged the machinery *as chattels* would not change the law and make that *personal* which before had been *real* property: *Lyle v. Palmer,* 42 Mich. 314–18; *Watson v. Watson Manufacturing Co.,* 30 N. J. Eq. 483.

Being a part of the realty, it could only be conveyed or encumbered by writing, under seal, in compliance with the rules of law governing the conveyance of real estate. While

the *intent* of the parties is to govern as to the *subject* on which a conveyance is to operate, it is beyond their *power* to make a conveyance operative without complying with the rules of law in respect to the mode of conveyance appropriate to the *kind* of property sought to be conveyed, and an *intent* to hypothecate a portion of the realty as personal property without a severance is one the law cannot carry into effect. A chattel mortgage cannot be given on a portion of the realty without a prior *actual* severance ; and the giving of such a mortgage will not operate as such severance: *Richardson v. Copeland*, 6 Gray, 538 ; *Gibbs v. Estey*, 15 Id. 589 ; *Rice v. Adams*, 4 Harrington (Del.) 335 ; *Trull v. Fuller*, 28 Me. 548.

Granting that the mortgage was binding as between the parties, it could have no force as to subsequent purchasers or encumbrancers even though they had *actual* notice of such mortgage : *Richardson v. Copeland*, 6 Gray, 538 ; *Gibbs v. Estey*, 15 Id. 589 ; and its filing in the township clerk's office would not operate as *constructive* notice : *Bringholff v. Munzenmaier*, 20 Iowa, 513.

But if such filing was constructive notice, then as to this defendant, who was a creditor of the mortgagors, the mortgage ceased to be a valid lien because:

1. It was not renewed as required by How. Stat. § 6196, in that the *first* affidavit fails to state that any amount is owing or unpaid thereon, but the affiant simply certifies that $1,275 is *claimed* by him to be due, which sum constitutes the interest of the mortgagees in the property: *Briggs v. Mette*, 42 Mich. 14 ; *People v. Becker*, 20 N. Y. 354.

2. The *second* affidavit was not filed until *after* the expiration of one year from the date of filing the first affidavit, and does not show the interest which the mortgagees had, by virtue of the mortgage, in the property therein described. The mortgage was conditioned for the payment of a note for $3,000 indorsed by the mortgagees, and the court finds that it was given to save the indorsers harmless from loss on account of such indorsement; but the affidavit fails to apprise creditors, and others having a right to know, whether the note had been paid or not, or whether the indorsers had suffered any loss by reason of their indorsement; and it appears from the findings that nothing was paid until seven months after the sale of the property on defendant's execution. The affidavit does not even state whether the mortgagees had been charged as indorsers, and the court finds that they were never so charged. The second affidavit states that there is

"due and unpaid the sum of $2,000 on the mortgage," while the prior one says that the sum of $1,275 is claimed to be due thereon.

The affidavit requisite to keep *this* mortgage in force must set forth the *interest* which the mortgagees have by virtue of it in the property mortgaged: How. Stat. § 6196; and being an *indemnity* mortgage, the affidavit should show that the mortgagees have been damnified or injured, and the facts showing such injury. By such a statement under oath other creditors would be informed of the true conditions between the mortgagors and mortgagees, but without it they could not know the interest the mortgagees had in the property: *Parker v. Morrison*, 46 N. H. 280; *Belknap v. Wendell*, 31 Id. 92; *Hill v. Gilman*, 39 Id. 88.

After this mortgage was given, and while the mortgagors were in actual possession of the property, holding themselves out as the owners thereof and the property as unincumbered, the firm of L. & L. Jenison, without any knowledge of the existence of the mortgage, and in full reliance upon such apparent unincumbered ownership, gave them credit from time to time by furnishing them with supplies to carry on their business, until the first day of October, 1875, when the total amount of such indebtedness was over seventeen hundred dollars; and in full reliance upon such apparent unincumbered ownership, they postponed bringing their action to recover such indebtedness until June, 1876.

Under these circumstances, we insist that if the mortgage was a valid lien when first filed, it ceased to be of any force, as against these creditors, when the mortgagees failed to keep it renewed by proper affidavit: *Cooper v. Brock*, 41 Mich. 491; *Fearey v. Cummings*, 41 Id. 383; *Briggs v. Mette*, 42 Id. 12; *Wallen v. Rossman*, 45 Id. 334; *Talcott v. Crippen*, 52 Id. 634; *Crippen v. Fletcher*, 56 Id. 389.

The fact that this debt was incurred in part while the mortgage was in force from the original filing, and that the default in keeping the same renewed occurred thereafter, does not change the rule, or make the mortgage valid: *Briggs v. Mette*, 42 Mich. 12; *Thompson v. Van Vechten*, 27 N. Y. 582.

The mortgage being conditioned for the payment by the mortgagors of a note indorsed by the mortgagees, and being an *indemnity* mortgage, and the note not being allowed to go to protest, but the mortgagees taking it up with their own note, which they renewed from time to time, it is insisted that the mortgage ceased to be, if it ever was, a lien upon the property in suit:

1. It would not be a lien for any other purpose than that expressed by its terms, and could not be construed to save the mortgagees harmless from loss by giving these new notes: *Hinchman v. Town*, 10 Mich. 510–514.

2. The note not being protested, the mortgagees were discharged from any liability thereon. They were not harmed by the indorsement, and had they paid the note without having been charged as indorsers they could not have recovered for the money so paid: *Ellsworth v. Brewer*, 11 Pick. 316; *Turner v. Leech*, 4 Barn. & Ald. *451 (6 E. C. L.); *Roscow v. Hardy*, 12 East, 434; 2 Pars. on Bills and Notes, 209.

If plaintiff recovers he must do so as purchaser at the foreclosure sale, and not as one of the mortgagees; and as such purchaser he must fail, as he acquired no title, the foreclosure proceedings being void because:

1. The power of sale was *joint*, not *several*, and must have been executed by the mortgagees *jointly;* but the sale was made by the direction of Manwaring alone, his co-mortgagee not authorizing or taking any part in it, or having any knowledge of it: *Rock River Paper Co. v. Fisk*, 47 Mich. 212–221; *Rumney v. Coville*, 51 Id. 186; 2 Perry on Trusts, § 499; and the power of sale must be strictly followed: *Flanders v. Chamberlain*, 24 Mich. 314.

2. The pretended notice of sale was utterly void because:

*a*—It does not pretend to be by virtue of the mortgage.

*b*—It does not give the names of the mortgagors or mortgagees, the date, or any other means by which the mortgage could be found or identified.

*c*—It does not even claim to be given by order of or under any authority from the mortgagees, or either of them.

3. Being only *one* of the mortgagees, he could not be the purchaser at such sale; the purchase must have been by *both* of the mortgagees: How. Stat. § 6200; and upon the face of the record it appears that the sale by Manwaring to himself was not made " fairly and in good faith." He bid in for $235 property worth $1,400, as shown in the findings in this case. [See note, page 142.—REPORTER.]

If plaintiff claims as mortgagee, and not as purchaser, his action must fail, because in such case his co-mortgagee is a necessary party plaintiff: *Wheeler v. Nichols*, 32 Me. 236; *Tyler v. Taylor*, 8 Barb. 587; *Durfee v. Grinnell*, 69 Ill. 372; *Smoot v. Wathen*, 8 Mo. 522.

They were *joint* owners of the mortgage, *joint* payees in the note, and *joint* indorsers; the mortgage was for their *joint*, not *several*, benefit, and the damage suffered, if any, was *joint*, and the mortgage created a *joint* estate in them.

If it be said that the non-joinder of Jenison was waived by not pleading it in abatement, then we say the plaintiff, being one of two joint owners, is only entitled to recover as damages *one half* the value of the property converted: *Blackborough v. Graves*, 1 Modern, 102; 1 Chitty, Pleading (16th Am. ed.) *75; *Gilbert v. Kennedy*, 22 Mich. 5; *Webber v. Merrill*, 34 N. H. 208; *Wilson v. Gamble*, 9 Id. 74; *Cooper v. Railway*. 49 Id. 212; *Addison v. Overend*, 6 Term Repts. 770; *Sherman v. Fall River Iron Works Co.*, 5 Allen, 215; yet he was given the total value of the property converted.

If Hiram Jenison should now sue for his damages for the conversion of this same property, this judgment would be no bar to his claim: 1 Chitty, Pl. (16th Am. ed.) *75; *Sherman v. Fall River Iron Works Co.*, 5 Allen, 215; *Sedgworth v. Overend*, 7 Term Repts. 279; *Bloxam v. Hubbard*, 5 East, 407; *Call v. Buttrick*, 4 Cush. 350.

No demand was made for the property, or attempt made to reduce it to possession, before bringing suit. It was rightfully in the possession of Haven, Blake & Co., and through the execution sale such possession was transferred to the purchasers thereat, and such sale was not a conversion of the property: *Campbell v. Quackenbush*, 33 Mich. 288–9; *Cadwell v. Pray*, 41 Id. 312; *Hathaway v. Brayman*, 42 N. Y. 324.

After the sale of the property as real estate, defendant's only interference with it was his claim of ownership, and sale to Leitelt; and even if covered by the chattel mortgage, he had the right to make such sale without being liable for a conversion of the property.

*Godwin & Earle*, for plaintiff:

Haven, Blake & Co., being the owners ot the land and machinery at date of mortgage, could deal with it as they saw fit; they had the right to treat the machinery as personal property, and sell it as such on the open market, or to chattel mortgage it. By' thus mortgaging it they severed it from the real property as matter of law, and the fact that there was no *actual* severance could not be used by them to defeat their mortgage, nor by any person claiming through them as execution creditor.

Jenison levied and bought with full notice; the removal of the machinery could be made without injury to the freehold, and it was worthless for any other purpose than removal. The rule was correctly laid down in *Wheeler v. Bedell*, 40

Mich. 693–696, and in the following cases : *Crippen v. Morrison*, 13 Mich. 23–37 ; *Adams v. Lee*, 31 Id. 440–443 ; *McAuliffe v. Mann*, 37 Id. 539–542 ; *Coleman v. Stearns Manufacturing Co.*, 38 Id. 30–41 ; *Jones v. Detroit Chair Co.*, 38 Id. 92–94; *Robertson v. Corsett*, 39 Id. 777–785 ; *Ingersoll v. Barnes*, 47 Id. 104–108. See, also, *O'Brien v. Kusterer*, 27 Mich. 289–293, and annotations; also, *Sisson v. Hibbard*, 75 N. Y. 542, a case exactly in point.

The claim that the mortgage is joint, and for that reason plaintiff cannot proceed alone, is untenable. Taken as a whole, the transaction is not a joint one. The mortgagees were not partners, but individually indorsed the note, and their liability was distinct. But if not so, either party could indemnify himself from loss, and a joint mortgage is good for such a purpose : *Castner v. Ins. Co.*, 46 Mich. 18 ; *Adams v. Niemann*, Id. 137.

No demand was necessary before suit. Jenison was notified of plaintiff's rights at the sale, yet he purchased the land, set up a claim to the personalty, and sold and delivered it to Leitelt, receiving $1,400 in cash for the same, and now claims to be an innocent purchaser because a deed or mortgage of the property was not recorded in the office of the register of deeds. The notice given was sufficient had there been an unrecorded real estate mortgage, and the facts furnish a complete answer to the claim of innocence set up by Jenison. Purchasers of real estate, with *actual* notice of an adverse interest not of record, are not purchasers in good faith, and are not within the recording laws of the State : *Thomas v. Stone*, Walker's Ch. 118–120 ; *Fitzhugh v. Barnard*, 12 Mich. 108–112 ; *Shotwell v. Harrison*, 22 Id. 418 ; Id., 30 Id. 179–181; *Battershall v. Stephens*, 34 Id. 68–76 ; *King v. Carpenter*, 37 Id. 363–370 ; *Austin v. Dean*, 40 Id. 386–389.

The renewal affidavits are sufficient. The mortgage was in force when the attachment was levied, and defendant's rights must stand or fall upon the attachment; the property attached was the land, and he had notice, both personal and of record, that the machinery had been severed therefrom. He obtained no greater rights until the execution sale, and prior to this the second renewal affidavit was filed, stating that $2,000 was unpaid on the mortgage, which was equivalent to the statement required by the statute. When the land was offered for sale plaintiff was present and gave notice of his claim.

But Jenison never was within the provisions of How.

Stat. § 6196; he was never a subsequent mortgagee or grantee in good faith within the meaning of said section. *Wetherell v. Spencer*, 3 Mich. 123–127; *Doyle v. Stevens*, 4 Id. 87, 92; *Kohl v. Lynn*, 34 Id. 360–1; *Feurey v. Cummings*, 41 Id. 378–84; *Waite v. Mathews*, 50 Id. 392–4.

As between the parties and their privies, a chattel mortgage or sale of fixtures will operate as a legal severance: *Ballou v. Jones*, 37 Ill. 95; *Corcoran v. Webster*, 50 Wis. 125.

MORSE, J. The plaintiff brought suit against the defendant, declaring in two counts,—one in trover for the conversion of two steam-boilers, one smoke-stack, one steam-engine, one stave-cutting machine, and one machine for dressing and circling heading, and the other in trespass for taking and carrying away the same property.

The case was tried before the court without a jury. The court found the facts to be, in substance, as follows:

1. On the twenty-eighth day of December, 1873, and for some years prior thereto, the firm of Haven, McKay & Co. were the owners of about two acres of land in the village of Grandville, Kent county, Michigan, on which they had erected a steam stave and heading mill, which they had run and operated for some time prior to that date. Said mill was always used exclusively in the business of manufacturing staves and heading. The mill building, when completed, cost about $1,500. It was a stout frame, about forty by fifty feet square, two stories high, inclosed, having a shingle roof, and was built for the express purpose of being used on said land as a stave and heading mill, and to have placed therein all the machinery hereinafter referred to. The building was well adapted to this use. After the removal of said machinery, and at the date of removal, the building was of little value, not exceeding $200. The business of running the mill had proved unprofitable, and had been abandoned, Haven, Blake & Co. having failed in business.

The firm of Haven, McKay & Co., upon the completion of said building, placed therein the following machinery, all of which was a part of the mill, and was necessary to consti-

tute such mill, and to furnish it with steam power to operate, viz.: One steam-engine, weighing between five and six tons, resting upon a solid foundation of wood, brick, and stone laid in mortar, and was securely fastened; two steam-boilers, weighing each about five tons, each resting upon a foundation laid in brick and mortar, and both arched over with brick laid in mortar, and they could not have been taken out without taking down some portion of the building,—that is, without removing the siding from some portion of the building; one smoke-stack, connected and used with said boilers; one circle stave-cutting machine, weighing one and one-half tons; and one machine for dressing and circling heading, weighing about eight hundred pounds. Both these machines were securely bolted down upon the floor by bolts running through the floor, and through timbers below the floor, and these securely fastened The machines were connected with the main shaft by belts, and were operated by the power furnished by the engine. All this machinery was well adapted to the use the firm were putting it to. This entire machinery remained in the same position as when first placed in the mill until its removal, in March, 1880, as hereinafter stated.

On the twenty-eighth day of December, 1873, the firm of Haven, Blake & Co., composed of John V. D. Haven, Joseph Blake, Levi Day, and Dwight Rankin, purchased of said firm of Haven, McKay & Co., and the same was conveyed to them by deed, as real estate, said property, and they immediately took possession of the same, and operated and ran said mill until December, 1877.

2. While Haven, Blake & Co. so owned the property, and on January 16, 1875, they procured the plaintiff and one Hiram Jenison to indorse their note for $3,000, payable to the order of said William Manwaring and Hiram Jenison. At its maturity this note, without going to protest, was renewed by the giving of a new note signed by Manwaring and Jenison, payable to the order of Haven, Blake & Co. This new note was renewed from time to time until Decem-

ber 28, 1877, when Manwaring was compelled to and did pay the sum of $1,900 thereon.

At the time of the making of the first note Haven, Blake & Co. gave to said Manwaring and Jenison a chattel mortgage to save them harmless from loss for indorsing said note. Said mortgage was filed in the office of the clerk of the town of Wyoming, January 16, 1875, that being the place of residence of the mortgagors, and the property being also there situate. The chattel mortgage covered the property in issue in this suit, and about three hundred cords of stave and heading bolts lying in the mill-yard. The machinery is described in the mortgage as being "now in use in this mill in Grandville."

3. On the thirteenth day of January, 1876, said mortgage was renewed by the filing of the following affidavit:

"*County of Kent, Township of Wyoming—ss.:* I, William Manwaring, one of the mortgagees named in the mortgage given by Haven, Blake & Co. to Hiram Jenison and William Manwaring, January 16, 1875, for the sum of three thousand dollars, do hereby certify that the sum of twelve hundred and seventy-five dollars is claimed by me to be due thereupon at the date hereof, which sum constitutes the amount of interest of Hiram Jenison and William Manwaring in the property therein mentioned and described.

Wm. Manwaring.

"Subscribed and sworn to before me this thirteenth January, 1876.

James A. Knowles, Notary Public, Kent Co., Mich."

And also renewed again February 21, 1877, by the filing of the affidavit given below, as follows:

"*State of Michigan, County of Kent—ss.:* Wm. Manwaring, the within mortgagee, being duly sworn, says that there is now due and unpaid on the said mortgage hereunto annexed the sum of two thousand dollars by virtue of said mortgage, and therein mentioned.    Wm. Manwaring.

"Sworn to and subscribed before me this fifteenth day of February, 1877.

"Wm. H. Galloway, Justice of the Peace."

4. The mill was closed up and stopped running, and the company became insolvent. The property in question re-

mained in the mill, and on the thirtieth day of July, 1877, Manwaring procured a constable to advertise and sell the same; and on July 30, 1877, said constable posted his notice of sale, of which the following is a copy, which was the only notice given of said sale, to-wit:

"CHATTEL-MORTGAGE SALE.

"By virtue of a chattel mortgage now in my hands, I shall sell to the highest bidder, at the stave-mill, in the village of Grandville, Kent Co., State of Michigan, on the eleventh day of August, 1877, at one o'clock P. M., all the personal property herein described: Two steam-boilers, one smoke-stack, one engine, one stave-cutting machine, and one machine for dressing and circling heading, and 50,000 staves, more or less.

"July 30, 1877. JAMES JEWELL, Constable."

At the time and place named said Jewell appeared and sold the property at auction, pursuant to the terms of the chattel mortgage, to William Manwaring, he being the highest bidder therefor. The property was bid in at the sum of $274.90, and Manwaring received a memorandum of his purchase from Jewell. Previous to the sale the said Jewell seized the property under the chattel mortgage by going into the mill, July 30, 1877, and announcing that he seized the property under the mortgage aforesaid. At the time of the sale the property was in view of the officer, but no part of it was detached from the mill, and the plaintiff did not then, nor at any other time, attempt to detach or remove said property from the mill, or any part of it, and did not exercise, or attempt to exercise, any control over it, excepting that after his purchase he claimed to own the property, and offered it for sale.

5. In the month of March, 1880, the defendant sold the property in question, which was still attached to the mill, for the sum of $1,400 to one Adolph Leitelt, which sum was paid by said Leitelt to defendant, the said property being then worth $1,400. Said Leitelt removed the property to Grand Rapids, and used it in his business. Nothing was done with it by defendant, except to sell it to Leitelt.

Plaintiff never demanded it of defendant, nor in any manner attempted to get possession of it.

6.. The title to the property in question claimed by Luman Jenison at the time of his said sale was this, to-wit: The firm of L. & L. Jenison, composed of Luman and Lucius Jenison, were creditors of Haven, Blake & Co. for goods and supplies furnished to said firm of Haven, Blake & Co. by said L. & L. Jenison, commencing on the twenty-ninth day of December, 1873, and continuing along from time to time up to the first day of October, 1875, at which time the amount of such indebtedness was over $1,700.

On the twelfth day of June, 1876, the said firm of L. & L. Jenison commenced a suit against the said firm of Haven, Blake & Co., by attachment, to collect said indebtedness, and on the date of the issuing of said writ the same was duly levied upon the two acres of land aforesaid upon which this mill was situated, and of which this machinery was a part.

This suit was duly prosecuted to effect, and on the fourth day of November, 1876, a judgment was duly rendered in favor of the plaintiffs and against the defendants for the sum of $1,793.17 damages, and costs to be taxed. Execution was duly issued on this judgment November 4, 1876, and was duly levied upon said property on the eighteenth day of November, 1876; and the said property was duly advertised and sold by the said sheriff as real estate, by virtue of said writ, on the twenty-eighth day of May, 1877, to the plaintiffs in said writ, for the sum of $900, the sheriff giving and causing to be filed the proper certificate of such sale; and subsequently, and on the nineteenth day of September, 1878, the property not being redeemed, he executed and delivered to said purchasers a deed of said property in pursuance of such sale.

At this sale Manwaring was present, and gave notice of his claim to the property in question, and the Jenisons, when they bought, knew of his claim. The defendants in said execution were the owners of said property at the time of the levy of the attachment, as well as at the levy of the execution aforesaid, and, from the time they purchased the

same as aforesaid, they never sold or encumbered it in any manner, except by the chattel mortgage aforesaid.

7. The plaintiff never had any lien on the property in question in this suit, or title thereto, except such lien as he acquired by virtue of the chattel mortgage aforesaid, and such title as he acquired by virtue of the sale under the notice, and by said Jewell, as aforesaid.

The circuit judge further found, as a matter of law, from the facts above stated, that the plaintiff was the owner of the property at the time of the sale and conversion of the same by the defendant, and that it was worth $1,400; and rendered judgment for the plaintiff in the sum of $1,815.42.

The defendant alleges that the facts found do not support the judgment, and brings error.

It is claimed that the plaintiff acquired no property in the goods and chattels in question here for several reasons :

1. That the machinery in issue in this suit was real estate, and therefore not subject to chattel mortgage.

2. The first renewal of the mortgage was not in sufficient compliance with the statute, in that it does not state any amount as being owing or unpaid upon it. The second renewal was not in time, not being filed until February 21, 1877.   How. Stat. § 6196.

3. The mortgage being given as an indemnity against loss upon the note indorsed by the plaintiff and Hiram Jenison, and that note not being protested, but a new note given by the indorsers as makers in its stead, the lien of the mortgage was lost.   By the note not being protested, Manwaring and Jenison were discharged from all liability thereon ; and the paying of the new note by plaintiff would not come under the terms of the mortgage.

4. The power of sale in the mortgage was to the mortgagees jointly, and not severally.   Manwaring alone could not execute the power.

5. The sale was void because the notice thereof was insufficient in several particulars, to-wit :

   a—It does not pretend to be by virtue of the mortgage.

   b—It does not give the name of mortgagors or mortgagees, the date, or any other means by which the mortgage could be identified or found.

   c—It does not claim to be done by order of or under any authority from the mortgagees, or either of them.

6. Manwaring could not purchase at the sale, being only one of the mortgagees.

7. If the plaintiff claims the property as mortgagee instead of purchaser, then he cannot recover without joining the other mortgagee, Hiram Jenison.

8. There should have been a demand for the property before suit.

There is no question as to the validity of the attachment proceedings, and the title of the defendant is undisputed, save by the claim of the plaintiff under this chattel mortgage and the sale by virtue of the power of sale contained therein.

The first question involved is the character of the property in issue. The defendant claims that, at the time the chattel mortgage was given, this machinery was a part of the realty, and not subject to its lien, and that it remained a part of the realty until its severance by Leitelt, and that the sale of the real estate, under the execution in the attachment proceedings, carried the title of this property to the defendant as purchaser at such execution sale.

There are many conflicting decisions in the books as to the dividing line between realty and personalty in cases where machinery has been affixed to mills and other buildings for use therein. A large number of cases hold that, if the article is attached for temporary use, with the intention of removing it, it does not lose its character as personalty; but if it is placed there for permanent improvement of the freehold, it becomes a part of the realty. *Hellawell v. Eastwood*, 6 Exch. 295, 312; *Lancaster v. Eve,* 94 E. C. L. 717; *Crane v. Brigham*, 11 N. J. Eq. 29; *Walmsley v. Milne*, 97 E. C. L. 114; *Walker v. Sherman*, 20 Wend. 636; *Potter v. Cromwell*, 40 N. Y. 287.

But most of the American authorities agree that the question of the intention of the party or parties affixing the machinery enters into the elements of each case. The permanency of the attachment, and its character in law, do not depend so much upon the degree of physical force with which the thing is attached, or the manner and means of its attachment, as upon the motives and intention of the party in attaching it. If the intention is that the articles

attached shall not by annexation become a part of the freehold, as a general rule they will not. The exception is where the subject or mode of annexation is such as that the attributes of personal property cannot be predicated of the thing in controversy (*Ford v. Cobb*, 20 N. Y. 344); as when the property cannot be removed without practically destroying it, or when it, or part of it, is essential to the support of that to which it is attached : *Tifft v. Horton*, 53 N. Y. 377; *Voorhees v. McGinnis*, 48 N. Y. 278; *Winslow v. Merchants' Ins. Co.*, 4 Metc. 306 ; *Crane v. Brigham*, 11 N. J. Eq. 29–35 ; *McRea v. Central Nat. Bank of Troy*, 66 N.Y. 489 ; *Sisson v. Hibbard*, 75 N. Y. 542 ; *Eaves v. Estes*, 10 Kan. 314; *Trull v. Fuller*, 28 Me. 548 ; *Ballou v. Jones*, 37 Ill. 95 ; *Wade v. Johnston*, 25 Ga. 331; *Teaff v. Hewitt*, 1 Ohio St. 511, 530 ; *Hill v. Wentworth*, 28 Vt. 428, 436.

In our own State it has been repeatedly held that the most important test in determining the character of the machinery affixed to a building is the intent of the parties making the annexation: *Coleman v. Stearns Manufacturing Co.*, 38 Mich. 40 ; *Crippen v. Morrison*, 13 Id. 36 ; *Adams v. Lee*, 31 Id. 440–43 ; *McAuliffe v. Mann*, 37 Id. 542; *Jones v. Detroit Chair Co.*, 38 Id. 92–94; *Robertson v. Corsett*, 39 Id. 777–85 ; *Ingersoll v. Barnes*, 47 Id. 104 ; *Ferris v. Quimby*, 41 Id. 206.

The rule is concisely laid down in these words by Chief Justice CAMPBELL in *Wheeler v. Bedell*, 40 Mich. 696 : "There is no universal test whereby the character of what is claimed to be a fixture can be determined in the abstract. Neither the mode of annexation, nor the manner of use, is in all cases conclusive. It must usually depend on the express or implied understanding of the parties concerned." The case of *Wheeler v. Bedell* was a contest between the holder of a real estate mortgage upon the land, which mortgage contained no reference to the planing-machine, and the holder of a chattel mortgage upon the planer, as to the title of it. The planing-machine was in the building when the real estate mortgage was given, and weighed about three tons, and was fastened to the floor at each end with cleats and two

bolts from a part called the hanger through the floor, and was fastened to sticks under the joists, with nuts and screws. It was connected with the line shaft by belts. The chattel mortgage was given after the real-estate mortgage, and with notice of it. The title was found to be in the holder of the chattel mortgage.

In the case before us, the intention of Haven, McKay & Co., who put this machinery in the mill, is gathered only from the mode of annexation and manner of use of the machinery, and the subsequent acts of Haven, Blake & Co., who were their successors. The machinery, save the engine and boilers, was fastened to the building nearly identical with the planing-machine in *Wheeler v. Bedell.* Haven, Blake & Co. no doubt treated it all as personalty, and such was the understanding evidently between them and the plaintiff. They were then the owners of the real estate, and could have secured him upon the land if the intention had not been to treat the machinery as personal chattels that could be removed at any time.

There was nothing about this machinery that prevented its removal and use away from the building. The fact that the building was of but little value without the machinery cuts no particular figure in the case, if the intention of the parties is to control, nor that the building was used for no other purpose than that of a stave and heading factory. *Sisson v. Hibbard*, 75 N. Y. 542.

And the further fact that the engine and boilers could not be removed without removing the siding from some portion of the building is not controlling, and cannot affect the plaintiff's rights. The removal did not take away or remove that which was essential to the support of the building; neither did it destroy or injure the chattels themselves; nor was the injury to the walls or sides of the building shown to be great either in extent or amount. That they were susceptible of removal, and of use elsewhere, is shown by the findings, and defendant's own sale of them to Leitelt. *Tifft v. Horton*, 53 N. Y. 384; *Sisson v. Hibbard*, 75 Id. 544, 545; *Crippen v. Morrison*, 13 Mich. 31, 32.

The finding that this machinery was beneficial and necessary to the use of the mill does not of necessity stamp it as realty.    Mills and factories are generally set up as entireties for the purpose of manufacturing; but, according to the current of modern decisions, as shown in *Crippen v. Morrison*, the ultimate purpose is disregarded, and the machinery therein, including even the engine and boilers, may be treated and regarded as chattels, especially where such is the intent of the parties interested; and if the articles are not expressly made for use in the particular mill and not elsewhere, and equally capable of beneficial use, on being removed and set up, in some other building, they may be either real or personal property, according to the intent of the parties in each particular case :    *Robertson v. Corsett,* 39 Mich. 783.

The cases relied upon as supporting a contrary doctrine in this State by the defendant's counsel are *Lyle v. Palmer,* 42 Mich. 316, and *Morrison v. Berry*, Id. 389.

In the case of *Lyle v. Palmer* the machinery in question was described in and covered by the real-estate mortgage, though it is stated that the parties supposed it to be personal. It was decided that Palmer, the trustee in bankruptcy of the mortgagors, could not hold the machinery, even if it was considered to be personalty; but Justice COOLEY in his opinion remarks that the machinery was specially adapted for "use in connection with the real estate ; it was put up for use, and actually used with it, and was not severed from the realty in ownership;" and therefore concludes that the parties were mistaken in supposing it to be personal property.

But in a dissenting opinion in *Morrison v. Berry*, the same Justice, on page 397, in discussing that case, says "that the question of fixture or no fixture depends upon the intention of the parties;" and quotes approvingly the language of Chief Justice CAMPBELL in *Wheeler v. Bedell.*

The controlling opinion in *Morrison v. Berry* was placed upon the ground that the intention of both parties was explicit that the articles were to become a part of the freehold, and therefore does not aid the defendant's case here;

and Justice Cooley dissented for the reason that the permission of the plaintiffs, the Berry Bros., that the things annexed should become a part of the freehold, was obtained by fraud, and that they had a right to withdraw their consent when the fraud was discovered, and claim the property as personalty, the same as if no consent had ever been given.

In the case at bar there is no finding that this machinery was specially adapted or built for this particular building, but that it "was well adapted to the use the firm was putting it to" in the mill. It was just as well adapted for use in any other mill for the same purposes.

When we take into consideration the large number of mills temporarily erected all over the country for the manufacture of staves, heading, and other articles, while the timber may last in a particular section, and then the machinery to be removed elsewhere to be put in another temporary structure for like uses; and the fact that this class of machinery is manufactured for sale and use, without reference to any particular building, and to be employed in various mills until worn out or destroyed,—it would not be in harmony with the general method of doing business, nor desirable, to make any or all of the characteristics of the annexation or use of this machinery in this mill the guide in determining whether it should be considered real or personal property, regardless of the intention of the parties, nor do I think there is any fixed or controlling rule of law requiring such holding.

The finding in regard to the value of the building without the machinery seems to be somewhat conflicting. It is stated, in one part of the finding, that the mill building, when completed, cost about $1,500, and in another that, at the date of the removal of the machinery, it was of little value, not exceeding $200. It was probably never worth the item of its cost. It was no doubt built for the purpose of covering the machinery, and supporting it in position while in use. It might well be said, under the findings in this case, that the building itself was not placed upon the premises for the permanent improvement of the freehold, but for temporary

use with the machinery while there was timber to be obtained in the vicinity for staves and heading. Such buildings or mills are not generally designed to be permanent, as are grist-mills and other manufacturing establishments that do not depend in their use upon the quantity of material for manufacture within easy reach, but which can be operated, if desired, as long as the community where they are located may exist. The purchasers under the execution sale did not intend to carry on a business in this mill, which had become unprofitable, and been abandoned by Haven, Blake & Co., presumably because its use had been unprofitable on account of the scarcity of material in the neighborhood. The defendant saw no value in this mill and machinery as real estate, but sold the articles in question here as personal property to one wishing and intending to use them elsewhere.

When Haven, Blake & Co. mortgaged the property to Manwaring and Jenison, they could have made it personalty by the mere severance of it from the building. I think, when they so mortgaged this machinery, no other person's rights then intervening or being affected by it, it was in law such a severance as would make the articles, between them and the mortgagees, personal property. I do not suppose that it will be claimed that, in a controversy between the mortgagees and Haven, Blake & Co., the latter could dispute the lien of the mortgage upon the ground that the articles were not chattels, but part of the real estate. *Corcoran v. Webster*, 50 Wis. 125.

The purchaser under the execution sale does not stand in the relation of a *bona fide* purchaser of the land without notice of the rights of the plaintiff. He only took, by his levy, the same title his judgment debtors had. It gave him a lien upon all the right, title, and interest of Haven, Blake & Co., but upon no better title. The question of good faith as purchaser at the execution sale does not arise, as there can be no claim of estoppel against either Haven, Blake & Co. or the plaintiff. At the time of sale he was notified and knew of plaintiff's claim, and he acquired no new equities

thereby: *French v. De Bow*, 38 Mich. 711; *Michigan Paneling M. & M. Co. v. Parsell*, Id. 475–81; *First Nat. Bank of Kalamazoo v. McAllister*, 46 Id. 398–402 ; *Drake v. McLean*, 47 Id. 102–4; *Sisson v. Hibbard*, 75 N. Y. 546.

It must be conceded that in this State, as well as others, under many decisions, that if the mortgage in this case had been given before these articles were put in the mill, their attachment, as they were affixed, would not have changed their character as chattels: *Crippen v. Morrison*, 13 Mich. 23–37; *Ingersoll v. Barnes*, 47 Id. 104; *Tifft v. Horton*, 53 N. Y. 377; *Voorhees v. McGinnis*, 48 Id. 278; *Sisson v. Hibbard*, 75 Id. 542.

Therefore I see no reason why the annexation of these articles to this building before the mortgage was executed should prevent their being treated as personalty, when it is manifest that it is the intent of the parties, and not the annexation, that controls and fixes their *status*. As shown in *Crippen v. Morrison*, the placing of a chattel upon the soil, or by fixture to a building upon the soil, never by necessity makes it a part of the realty where the chattel is yet separable, and capable of being removed by the owner.

The cases cited by defendant's counsel from Massachusetts hold a different doctrine, for the reason "that the intention of the parties to change it to personal property is one which the law will not carry into effect:" *Richardson v. Copeland*, 6 Gray, 538; *Gibbs v. Estey*, 15 Id. 589 ; *Pierce v George*, 108 Mass. 82. This, however, is not the law in this State.

The first renewal of the mortgage was sufficient. It sets forth that $1,275 "constitutes the amount of interest of Hiram Jenison and William Manwaring in the property therein mentioned and described." It is in compliance with the statute. How. Stat. § 6196.

The second affidavit was not filed in time, but was sufficient in form. The attachment levy under which the defendant claims was made June 12, 1876, and judgment obtained November 4, 1876. The levy, by execution upon this judgment, was made November 18, 1876, and sale under such levy took place May 28, 1877, at which sale the plaintiff was

present, and gave notice to the bidders of his claim under the mortgage.

It will be seen that the mortgage was in force by virtue of the first renewal, when both the attachment and execution levies were made; and, when the sale was made, the second renewal had been in force under the exception to the statute for over three months. The exception to the statute reads as follows: "Provided, that such affidavit being made and filed before any purchase of such mortgaged property shall be made, or other mortgage received or *lien obtained thereon in good faith,* shall be as valid to continue in effect such mortgage, as if the same were made and filed within the period as above provided." How. Stat. §§ 6196, 6197.

When the defendant acquired his attachment and execution lien, the mortgage was valid, and he had constructive notice of plaintiff's rights under the same; and also, when he purchased, he had both actual and constructive notice. He must take his lien as it stood when he acquired it. He did not gain any element of good faith by the simple omission of plaintiff to file his affidavit in time. If the renewal had not been made before the sale, a different question might have arisen, but it is not necessary to discuss it here. The defendant obtained his lien and made the purchase at the sale while the mortgage was in force under the statute, and must be held as concluded thereby. The debt upon which he obtained judgment was not incurred during the month this mortgage was not renewed. Indeed, his claim was adjudicated and fixed by judgment while the mortgage was in force under the first renewal, which was in time and valid.

When the note upon which Manwaring and Jenison were indorsers became due, it was not necessary that they should wait for the protest of the note in order to keep their indemnity mortgage alive. They had a right to pay the note by giving their own, as they did, and hold their security, as they did; and if, instead of renewing the old note, they saw fit to change the character of their liability to the holder of the paper, with the consent of Haven, Blake & Co., no one else has any reason to complain.

It is claimed that Hiram Jenison had nothing to do with the sale, and that it was directed by Manwaring alone, who had no right, under the power of sale in the mortgage, to do so.  The record does not show but that Jenison acquiesced in all that Manwaring did.  The finding is simply that Manwaring procured the constable to advertise and sell the same. In the absence of any proof to the contrary, it would be presumed, we think, that the advertisement and sale were made with Jenison's consent.  At least, he does not complain of it.

There is no doubt but Manwaring had a right to purchase the property at the sale.  It was not necessary that he and Jenison should both be present and bid together, or that he should purchase the property in the names of both.  There is no warrant in the statute for any such idea.  How. Stat. § 6200.[1]

The only remaining objection necessary to notice is the one that the notice of sale was insufficient.  The notice does not give the date of the mortgage, or its amount, or the names of either mortgagors or mortgagees, but describes the property, and there is no complaint that the notices, such as they were, were not sufficiently and properly posted as to time or places of posting.

It does not appear that any one was misled by this notice. There was but one mortgage upon the property, and that was on file in the proper office.  Any one seeing the notice, and wishing to bid upon the property, could easily inform himself as to the identity of the mortgage.

Was the sale void because of the failure in the notice to describe the mortgage more accurately, and the omission therefrom of the names of the mortgagors and mortgagees?  We think not.  The power of sale, in default of the payment by Haven, Blake & Co. of the note indorsed by Manwaring and Jenison, authorized the mortgagees " to sell at public auction,

---

[1] How. St. § 6200, provides "that at any sale of property upon foreclosure of a chattel mortgage, the mortgagee or his assigns, or his or their legal representative, may *fairly* and in *good faith* purchase the property so offered for sale, or any part thereof."

Act 178, Public Acts of 1887, p. 185, amends How. Stat. § 6200, by extending its provisions to a pledge and pledgee.

after the like notice as is required by law for constables' sales, the goods, chattels, and personal property" described in the mortgage.

The statute governing constable's sales on execution, in force at the time of the sale in question here, and in relation to the notice thereof, provided that the constable should "give public notice, by advertisement signed by himself, and put up at three public places in the city or township where the goods and chattels shall be taken, when and where they will be exposed for sale." Comp. Laws 1871, § 5414. The notice was required to be put up at least five days before the time appointed for the sale. Comp. Laws 1871, § 5415.

Under this statute it was held in *Perkins v. Spaulding*, 2 Mich. 160, that the omission of the name of the defendant in execution would not vitiate a sale; and it was never considered necessary to insert the name of the plaintiff in execution: Cow. Treat. § 1620.

The statute has also, since then, received a legislative construction by the amendment of 1879, prescribing that the notice must contain the names of the parties to the suit: How. Stat. § 6980.

Notices of foreclosure sale on chattel mortgages have also, in other states, been held valid notwithstanding the defects pointed out in the present notice: Jones, Chat. Mortg. § 795; *Waite v. Dennison*, 51 Ill. 319; *McConnell v. Scott*, 67 Ill. 274; *Fitzpatrick v. Fitzpatrick*, 6 R. I. 64.

In *Waite v. Dennison* the notice gave neither the date of the mortgage nor the names of the parties to it. It was not signed by any one, but stated in the body of the notice that the sale would be made by W. A. Butters & Co., without stating in what capacity they were acting. It was shown *aliunde* that they were the agents of the mortgagee.

While the power must be strictly pursued, it is only necessary that it be fairly executed. There is nothing to be gained by requiring, in a sale of this kind, any technicalities the want of which has injured no one.

The omissions complained of in this notice are mere irregularities. There is no showing in the record that the defend-

ant lost anything thereby; and, if the strict letter of the power of sale was not complied with, there was no wrong to defendant. No one could complain but the mortgagors, and they seem to be content. The plaintiff, as mortgagee, had a right to take possession of the property, and the defendant's act of selling and removing it was a conversion.. *McConnell v. Scott*, 67 Ill. 277. The amount bid for the property by Manwaring cuts no figure in the case, because the amount of the mortgage debt, at the time of the sale, was more than the value of the property.

If a thousand bidders had attended the sale, and the record is silent as to the attendance, and run the property up to its full value or more, it would not have been of any benefit to the defendant, as the mortgage debt in that event would have swallowed the property.

There was no necessity for making any demand before suit.

The defendant had full notice of plaintiff's claim, and was a trespasser from the beginning.

The judgment is affirmed, with costs.

The other Justices concurred.