Cuyaghoga County, Ohio, Common Pleas.)

### CHRISTIAN SCHNEIDER v. J. S. SCHNEIDER et al.

*Fixtures—*

Whether property doubtful in its character, is real or personal, to make it real there must be: 1. Actual annexation to the realty, or something appurtenant thereto. 2. Appropriation to the use or purpose of that part of the realty with which it is connected. 3. The intention of the party making the annexation to make the article a permanent accession to the freehold—his intention being inferred from the nature of the article affixed, the relation and the situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made.

*Same—Brewery—*

Steam pumps, large frumentum tubs, copper and iron bottoms, copper grant and pfat, a copper strainer, a large steam kettle, the large vats in the cellar, and the fermenting tubs, although large and cumbersome, and extremely difficult to remove, and other articles of like character in a brewery where it appears that these articles were attached and connected in such a way as to be capable of removal, although they were all parts of one general scheme and machinery for brewing, held, not part of the realty.

---

NOBLE, J.

The main issues in this case have already been disposed of at a former term of this court, and in the decree then entered, in which the sale of the premises and property in controversy was ordered, the court ordered certain specific articles of property situated on and in the brewery property in controversy sold, the character of which, as to being real or personal, was to be thereafter determined. In the present hearing, this is one of the things to be done. In the former hearing, however, the court did determine, as held by this branch of the court, on this trial, the follow-

ing specific articles in the brewery in question to be part of the realty, to-wit—a surface cooler and steel hop-jack, a hot-water tank, a conversion tub and supports, including stands, clamps, bolts, washers and all those specific articles included in the specifications of defendant Connoy as iron supports; also an Edmunds elevator, and certain plumbing work done by Chafer and Becker; including steam water pipes and connections; also a Smith and Vail pump, converted into a Burton pump, so that those specific articles need no further attention.

In the first place, what principle of law shall the court go upon in deciding the question? In 1 Ohio St., 528, the Supreme Court lays down the following rules as essential in determining whether property doubtful in its character, situated like this, is real or personal. To make it real, there must be:

1. Actual annexation to the realty, or something appurtenant thereto.

2. Appropriation to the use or purpose of that part of the realty with which it is connected.

3. The intention of the party making the annexation to make the article a permanent accession to the freehold—his intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made.''

In formulating these rules, the court takes occasion to remark that the extent and mode of annexation must depend upon the nature of the article itself, the use to which it is applied, and other attending circumstances; and whether articles are personal property or fixtures must be determinable and plainly appear from an inspection of the property itself taking into consideration its nature, mode of attachment, purpose for which used, and the relation of the party making the annexation, and in some instances, perhaps, other attending circumstanes indicating the intent to make a permanent accession to the realty; and inasmuch as it requires a positive act on the part of the person making the annexation to change the nature and legal qualities of a chattel into that of a fixture, the intention to make the article a permanent accession to the realty must affirmatively and plainy appear, and if it be a matter left in doubt or uncertainty, the legal qualities of the article are not changed, and the article must be deemed a chattel.

Later on we find another decision of the Supreme Court in the 22nd Ohio St., 578, in which the court uses the following language:

"The general principle to be kept in view, which underlies all questions of this kind, is the distinction between the business which is carried on in or upon the premises, and the premises, or locus in quo. The former is personal in its nature, and articles that are merely accessory to the business, and have been put on the premises for that purpose, and not accessions to the real estate, retain the general character of the principal to which they approximately belong and are subservient. But articles which have been annexed to the premises as accessory to it, whatever business may be carried on upon it, and not peculiarly for the benefit of a present business, which may be of a temporary duration, become subservient to the realty, and acquire and retain its legal character. As, however, the combined use of both the real and personal property is necessary for the business, the difficulty, in any given case, consists in determining on which side of the dividing line to assign the particular article in question.''

And the court refers approvingly to another case in the 14th Ohio St., 577. In that case there was a brewery purchased, and a real and chattel mortgage given back for the purchase money. After the purchase, a copper kettle, distilling apparatus, and a tub for soaking barley was

added.    The common pleas and district courts held it all to be personal property, using the language quoted in the 22nd Ohio St; and in the case in the 14th Ohio St, further held:    that whether the property could be removed without material injury to the freehold, or destroying its qualities or value, was a question of fact upon which evidence in the case was conflicting; and the finding of the common pleas and district courts was not disturbed

These are the principles, then, upon which the court must base its conclusion as to the articles in controversy    The building upon the premises in controversy was erected by Mr Schneider for use as a brewery. He owned the real estate, erected the building, put in the machinery, kettles, tubs and all of the other articles in controversy    The testimony of the architect, Mr Eiseman, shows that the original plans for the building were by eastern architects, but that they were revised by him at the request of Mr Schneider, changes being made in the plans so that the machinery and the mechanical construction could be changed and shifted as desired, and openings were made so that machinery and other articles could be put in or out at any time; that a part of the iron structure was put in prior to the erection of the building, and the balance put in after; and that they could be removed without injury to the walls    That in the northwest corner of the brew house, between the second and third floors, was a large opening connected with the annex; and that he drew plans of the wash house, and that so far as the structure was concerned, anything could be taken out    There was a large number of articles about which there is substantially no contention, such as the smaller tools in use about the building; and the principal contention arises out of such articles as steam pumps, large frumentum tubs, copper and iron bottoms, copper grant and pfaf, a copper strainer, a large steam kettle, and other articles of like character.

The testimony was very conclusive that all of these articles were attached and connected in such a way as to be capable of removal, although they were all parts of one general scheme and machinery for brewing; and the testimony showed that the large steam kettle and the large pieces referred to, could be removed by unscrewing flange joints and taking apart; that although they were riveted together, the rivets could be cut and large pieces taken through the opening in the walls, and could be again put together, all without material injury to the articles themselves or to the building.

The testimony also showed very clearly that there was a custom among brewers here to remove articles of this character from one place to another in the brewery, or outside of the brewery, and substitute one for another; and that there were places where articles removed in this way are for sale; and that it was a custom of the trade to treat them as movable articles, and interchangeable.

The testimony further shows that the large vats in the cellar, and the fermenting tubs, although large and cumbersome, and extremely difficult to remove, could be moved and taken out of the brewery, and that the custom of the trade sanctions it, and although plainly accessory to the business, they were not accessory to the building; and it seems to the court that the distinctions drawn by the Supreme Court between those articles which are accessory to the business and which are accessory to the building plainly marks a dividing line in the matters in controversy. Very few, if any, of the articles mentioned, can be said to be accessory to the building alone, as distinguished from the business; and the nature of the business, was such as to plainly indicate that they were accessory and subservient to it.    And, again, there was no affirmative testimony tending in the least to show the intention of either of the Mr. Schneiders

to change the character of what was, by its nature, personal, (as all of the articles in dispute were), into real property. And our Supreme Court has held, as already suggested, that this must be affirmatively shown by the party claiming it to be real property.

The view taken by the court seems to have been quite generally followed where the question has arisen.

The Supreme Court of Michigan, in the case of Manwaring v. Jenison, 27 N. W. Rep., 899, held that certain casks or hogsheads and fermenting tubs, and the copper cooler used in a brewery, were personal property; and that while the casks and tubs were necessary for carrying on the business to which the premises were appropriated, and while constructed for use in the brewery, and placed there with intent to remain permanently, would be equally well adapted to a like use in other breweries; and the copper cooler, being a loose, movable utensil, the same as is in common use in breweries, was a chattel.

The Supreme Court of Minnesota recognized the same doctrine.

The court is constrained to hold that with the exception of the articles already enumerated, as having been already passed upon by another branch of this court, the specific articles set forth in the order of the court, referred to, are personal property.

Henderson & Kline, for Plaintiffs.

Gilbert & Hills, for Defendants.