648

No. 10716.   MAY 18, 1935.

*John C. Parker,* for plaintiff.   *McCall & Jackson,* for defendant.

GILBERT, Justice.   J. R. O. Lindsey, as administrator of the estate of Minnie R. Blunt, filed an equitable petition against J. D. Robinson, alleging that as such administrator he had title to certain described property, 475 acres, more or less, of lot 121 in the 9th district of Colquitt County, Georgia, the legal title to which had been conveyed by warranty deed from J. R. M. Lindsey on March 21, 1901, to his intestate.   From the copy of the deed which is attached as exhibit A, it is disclosed that J. R. M. Lindsey conveyed the said property and certain live stock to his daughter, then Minnie R. Lindsey, who was non compos mentis, but reserving to himself the right to hold the same in trust for her, and to "bargain and sell" the same for her and in her name, appointing at and after his death his son, W. B. Lindsey, "to hold all of said property of this remaining, and also the increase there may be in the stock herein conveyed," said W. B. Lindsey "to hold same in trust for the use and benefit of said Minnie R. Lindsey, her bodily heirs,"

further giving to him as trustee "the right to sell and dispose of said property either at private or public sale as he may see fit or think to the interest of my daughter Minnie R. Lindsey," and that "said W. B. Lindsey need not give any bond to undertake this trust, nor need he get from any authority any order of the court as to the sale of the said property, but this deed shall be all the authority he may need. It being the full intention of this conveyance, that while said property shall be the property of my said daughter Minnie R. Lindsey, yet she shall have no control over the same, but the full control of same shall remain in my [me] until my death and then vest in my son W. B. Lindsey." The petition alleged that prior to the appointment and qualification of petitioner as administrator of said estate both J. R. M. Lindsey and W. B. Lindsey had died, and no trustee or administrator had been appointed except petitioner as administrator of the estate of Minnie R. Blunt, who, it appears from the brief of plaintiff in error, was formerly Minnie R. Lindsey and had married after the deed had been executed by her father. The petition further alleged that the defendant was advertising the property for sale under and by virtue of a deed to secure a debt, executed by W. B. Lindsey to the defendant on the 13th day of January, 1931, and that the advertisement of sale had been published in a newspaper in Colquitt County, Georgia; that said security deed was executed by W. B. Lindsey to secure the payment of a promissory note for the principal sum of $444.53, besides interest, and that J. W. Green had also signed the note, and the defendant had sued him thereon without joining W. B. Lindsey, and had obtained judgment; that the defendant had no legal title to the property and no power and right to sell the same under the said security deed or any other instrument, and had no valid and legal debt against the said land and trust estate by reason of the said promissory note or any other instrument; that neither W. B. Lindsey nor any other person had any right or power to sell the said property to secure the said debt of W. B. Lindsey to the defendant; that W. B. Lindsey had no right or power to bind the trust estate by the execution of the said note; that it shows upon its face that it is the personal obligation of W. B. Lindsey and J. W. Green, and not of W. B. Lindsey as trustee for Minnie R. Blunt; that the security deed, a copy of which was attached to the petition, shows upon its face that W. B.

Lindsey claimed the conveyed land as his own, and not as the property of the trust estate, and that the undertaking was personal and not in his capacity as trustee; that the security deed is void in law and under the instrument creating the trust estate; that petitioner can not effectually maintain and protect the rights of the heirs at law of Minnie R. Blunt while said security deed remains unsettled and uncanceled of record; that it operates to throw a cloud or suspicion upon petitioner's rights and title to said land, and is being used vexatiously and injuriously to him by reason of the attempted exercise of the purported power of sale contained therein; and that petitioner will be unable to administer said estate and sell said land free from cloud and purported encumbrances while said security deed is of record unsatisfied and uncanceled. The prayer was for process; that the defendant and all persons acting by, through, or for him be enjoined from exercising the power of sale contained in the said security deed, in so far as said sale involved the land claimed by petitioner, but not as to ten acres which had been included in the deed and owned by W. B. Lindsey personally; that the said security deed be delivered up and canceled as a cloud upon petitioner's title to the said land claimed by petitioner, but not as to the land owned by W. B. Lindsey individually; and for such other and further relief as to the court might seem proper in equity. The defendant admitted his residence as alleged, that he was advertising the property for sale under the power given in the security deed, and that the security deed and note were executed as alleged; but he alleged that the same were given by W. B. Lindsey as trustee for Minnie R. Blunt, née Lindsey, under and by virtue of the power given in the deed from her father; that J. W. Green indorsed the note; and that the proceeds of said note were loaned to said W. B. Lindsey as trustee upon the representation that he was making application for said funds for the use of said Minnie R. Blunt, and that the security represented in the security deed was her property under the said trust deed. He alleged, for want of sufficient information, that he could not admit or deny the other allegations of the petition. For further answer he said that prior to the execution of the note by W. B. Lindsey to him, J. R. M. Lindsey, the creator of the trust estate, had died, and that the trusteeship passed to W. B. Lindsey, and that the amount of $443.53, besides interest, was money that he borrowed from the

defendant for the said Minnie R. Blunt, cestui que trust, which he had a right to do as trustee, under the said trust deed, and that W. B. Lindsey made known to him that he was trustee in the said capacity and that the money was for his cestui que trust, and that defendant had a right to sell the said land as advertised. Upon the trial the petitioner introduced in evidence certified copy of his letters of administration, the trust deed, his affidavit that the allegations of his petition were true and that the alleged facts still existed at the time of the hearing, and that there had been no change in the title to the property since the filing of the suit, that the creator of the trust and his son, W. B. Lindsey, died prior to the appointment of petitioner as administrator, and that no other trustee or administrator had been appointed; certified copy of the security deed to the defendant; copy of the Moultrie Observer, a newspaper, containing the advertisement of sale; copy of the promissory note; the original petition and affidavit attached thereto. The defendant introduced his sworn answer, and his affidavit in support of the allegations in his answer as to the representations made by W. B. Lindsey at the time of borrowing the money and executing the security deed. Petitioner objected to that part of the affidavit as to conversations with the deceased W. B. Lindsey, which objection was overruled. The court denied an injunction. Petitioner excepted to that judgment, and to the ruling on the admission in evidence of the alleged conversation between the defendant and W. B. Lindsey, deceased.

In order to determine whether or not the defendant should have been enjoined from selling the property in question, it is necessary to decide whether in the deed of trust a power was given to the trustee, W. B. Lindsey, to execute a security deed by virtue of the language employed in the instrument, or whether the authority "to sell and dispose" was limited to a sale. It is evident that the creator of the trust, realizing the inability of his mentally incompetent daughter to manage her own affairs, desired to place the control of the property in competent hands "to hold same in trust for the use and benefit" of her; but apprehending that the income or use of the property might become insufficient for her proper support and maintenance, he conferred upon the trustee, W. B. Lindsey, at and after his death, the power to "sell and dispose" of the property in his discretion for the benefit of the cestui

que trust. What is comprehended in this term? The words "sell" and "dispose" are synonymous when coupled together in designating a power in a will authorizing the sale and disposal of property, when accompanied by a further statement that the sale or disposition may be made at public or private sale, since such words limit the method of disposition of property to a conveyance. Words and Phrases (2nd Series), 519, citing Rutledge v. Crampton, 150 Ala. 275 (43 So. 822). In like manner we hold that they are equally synonymous when so used in a trust deed. Also, "A power to sell and dispose of property is merely a power to sell, but a power to dispose of without any other qualification extends to a disposal by exchange as well as a sale." Words and Phrases (1st Series), 6407, citing In re Carr, 16 R. I. 645 (19 Atl. 145, 146, 7 L. R. A. 386, 27 Am. St. R. 773); Phelps v. Harris, 101 U. S. 370, 381 (25 L. ed. 855). In the present case the expression "the right to sell and dispose of said property" was accompanied by the further statement "either at private or public sale," and under the definitions above given we construe the language to mean that a *sale* was authorized. We are further justified in this construction by the fact that the creator of the trust provided in the deed that "said W. B. Lindsey need not give any bond to undertake this trust, nor need he get from any authority any order of the court *as to the sale of said property."* (Italics ours.) Thus it is made manifest that the words "sell" and "dispose" were not used with any desire to make a technical distinction between them, because, otherwise, it may reasonably be assumed that he would also have exempted the trustee, his son, from the necessity of obtaining any order of court to "dispose" of the said property. The Code of 1933, § 37-607, provides: "Powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed." "A power of sale does not authorize a trustee to transfer the title for some other purpose." 26 R. C. L. 1290, § 140. In *Taylor* v. *Phillips,* 147 *Ga.* 761, 770 (95 S. E. 289), this court, speaking through Mr. Justice Atkinson, after quoting from Sires v. Sires, 43 S. C. 266 (21 S. E. 115), in which "sell and dispose" was construed to mean "sell," said: "The trust deed is to be construed in its entirety, and effect is to be given to the intention of the maker as reflected from the language of the instrument."

In the instant case there is no language in the trust deed that

indicates otherwise than that it was the intention of the creator of the trust that the use or proceeds of the trust property should be used for the support of his daughter, and that in the event of a sale it should be conveyed for a valuable and adequate consideration from which the daughter could continue to receive support. It is argued by the defendant in his brief that the security deed, by passing title, constituted a sale and was a fair exercise of the power granted. Although the title passed, such an instrument did not conform to the requirements of the trust deed as to how the property should be dealt with. A security deed is not employed when it is intended to convey title out of the grantor without any reservation of a right to again become vested with the title upon the payment of the debt which is secured thereby. It differs from a mortgage in that it vests title in the grantee, but it is not the expression of an intention to make a permanent alienation or sale. Executing and delivering such an instrument tends to jeopardize the interest of the cestui que. trust. The sale contemplated by the creator of the trust was to be by such a conveyance as would produce, not a portion, but the full value of the property, in order that the equivalent of the original corpus might be maintained for the benefit of his daughter. A security deed being an instrument peculiar to Georgia, there is a lack of authority exactly in point in other jurisdictions and a dearth of precedents in this State, but we decide the case on the above reasoning. It is controlled in principle, too, by *McMillan* v. *Cox,* 109 *Ga.* 42 (34 S. E. 341), where this court was called upon to construe a power given under a will. By its terms real and personal property was given by a testator to his wife for life, with remainder to his children, with power conferred on the executrix, his wife, to sell any or all of the property so devised and to reinvest the proceeds, expressed in language which plainly limited the purpose for which the sale could be made to that of reinvestment; and this court held, notwithstanding the will contained broad and liberal provisions as to the manner in which the power might be exercised, that the executrix was not empowered to convey the title of such property as security for a debt. The court said: "The intention gathered from the entire will is, that his wife and children shall be supported from the rents and profits of the estate of which he was possessed; that inasmuch as it was probable that the estate would remain under the control of his

# 654

executrix for a considerable length of time, and as some of his children were young and had to be reared and educated, if such rents and profits were not sufficient to maintain and educate the children, then he gave the power to his executrix to sell such a part of his estate as was necessary for this purpose. In the meantime, if it became desirable to sell any particular pieces of property, or all of it, and with the proceeds to procure other property, power was given to the executrix so to do, for the benefit of his devisees; but the testator nowhere in his will used language which, fairly construed, showed that he intended to give his executrix power to borrow money or contract debts with the incident risk of dissipating an estate which he set aside for the support and maintenance of those whom he left dependent upon it." Construing the intention of the creator of the trust in the present case, we are bound to hold that the security deed was not binding against the trust estate, and that the court erred in not granting an injunction as prayed.

The second headnote does not need elaboration.

*Judgment reversed. All the Justices concur.*