**HOMAC INCORPORATED, Plaintiff,**

v.

**FORT WAYNE MORTGAGE COMPANY, Defendant.**

**Civ. A. No. C82–2721A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

June 1, 1983.

On Motion for Reconsideration
Aug. 12, 1983.

Hugh M. Dorsey, III, Atlanta, Ga., for plaintiff.

Robert P. Wildau, Atlanta, Ga., for defendant.

## ORDER

SHOOB, District Judge.

The above-styled action was filed by Homac Incorporated (hereinafter "Homac") on December 1, 1982, seeking to enjoin the repossession of a double-wide mobile home now located in a certain subdivision in Bartow County, Georgia, on the grounds that the mobile home became plaintiff's property by virtue of its foreclosure of the security deed on the underlying real estate in January 1982. Defendant Fort Wayne Mortgage Company (hereinafter "Fort Wayne") filed its answer and counterclaim on December 20, 1982, showing that it alone extended credit on the security of the mobile home, that it had duly foreclosed on the same as personal property, and that plaintiff's assertion of dominion over the home constituted a conversion for which plaintiff was liable in damages and attorney's fees. Following a hearing on plaintiff's motion for a temporary restraining order, the parties agreed that defendant would refrain from repossessing the mobile home and submit their legal contentions to the Court by way of cross-motions for summary judgment. The parties' respective motions for summary judgment are now before the Court for decision.

## FACTS

The Court finds the following facts to be undisputed by the parties and material to a resolution of the pending motions for summary judgment.

On or about March 27, 1981, Homac-Barnes Incorporated, the predecessor entity to plaintiff in this action, conveyed to J. Bl'ask, Inc., a certain tract of land in Bartow County, Georgia, known alternatively as Nowlin Landings or Allatoona Crossings Subdivision. On the same date J. Bl'ask gave Homac-Barnes a purchase money deed to secure debt together with a UCC–1 financing statement covering all personal property of J. Bl'ask delivered to or situated on the property described in the deed to secure debt. The deed was duly recorded and the financing statement filed with the clerk of the Superior Court of Bartow County on or about April 27, 1981.

At some time between September 5 and October 5, 1981, a certain All-American Heritage double-wide mobile home was placed on Lot 17H in the Allatoona Crossings Subdivision. At the time the mobile home was placed on the land, it was owned by a dealer in such property known as Estates Mobile Home Sales of Douglasville, Georgia, and was still subject to a security interest in its manufacturer, All-American of Ashburn, Inc.

On or about October 5, 1981, one Douglass Alan Haddon executed a retail installment contract and security agreement with Estates for the purchase of the mobile home. At that time Mr. Haddon was the holder of a warranty deed executed and delivered by J. Bl'ask, Inc., sometime prior to September 24, 1981, purporting to convey fee simple title to the real property on which the home was located. This deed, however, did not reveal the existence of the prior deed to secure debt from Mr. Haddon's seller, J. Bl'ask, Inc., to the predecessor in interest of the plaintiff in this action, Homac-Barnes, Inc.

On October 8, 1981, Mr. Haddon executed a document called "Owner or Mortgagee's Waiver and Consent," which defendant Fort Wayne required before it would accept the seller's assignment of the retail installment contract and security agreement. The waiver and consent provided in part: "[T]he Undersigned consents to placement of the Goods on the premises; [and] agrees that the Goods shall remain personally [sic] notwithstanding such placement or any annexation to the real es-

tate...." On the same date, Haddon's seller, Estates, assigned the retail installment contract and security agreement to defendant Fort Wayne.

On or about December 2, 1981, defendant transmitted Mr. Haddon's application for a motor vehicle certificate of title showing Fort Wayne as first lienholder to the Georgia Motor Vehicle Division. The application was received on December 3, and certificates of title were issued for each half of the double-wide mobile home on January 5, 1982.

Also on January 5, 1982, plaintiff Homac foreclosed on the subdivision subject to its purchase money deed to secure debt and subsequently issued itself a certain "Deeds [sic] Under Power" to the subject property which were recorded on May 21, 1982.

Mr. Haddon defaulted on his obligations under the retail installment contract and security agreement, and on July 29, 1982, Fort Wayne accelerated his obligations under the contract. On or about August 17, 1982, Sterling J. Ford of defendant's Atlanta office visited the subdivision where the mobile home was located to verify its readiness for moving and found strangers living in it. The occupants were Virgil and Beverlie Chumley, doing business as V & B Enterprises, who had acquired an option to purchase the subdivision from plaintiff. When the Chumleys first saw the mobile home in June 1982, the home was still installed as the dealer had set it up, with the wheels and axles and towing tongues still attached to it. If raised just far enough to permit dismantling of the concrete piers on which it rested, the home could have been lowered back onto its undercarriage and towed away in halves just as it had been brought to the site.

On August 23, 1982, plaintiff wrote to defendant setting forth its claim to ownership of the mobile home. The Chumleys, as V & B Enterprises, had executed their option agreement with plaintiff on July 15 but only exercised the option therein granted on or about September 22, 1982, and did not begin "underpinning" the mobile home by the construction of a permanent con-

crete block outer wall around the piers supporting it until mid-October.

On October 15, 1982, Fort Wayne filed its affidavit and summons for foreclosure of personal property in the Superior Court of Bartow County, seeking possession of the mobile home, and on November 15, 1982, that court issued a writ of possession to Fort Wayne entitling the latter to possession of the mobile home. This suit to enjoin repossession was filed shortly thereafter.

### DISCUSSION

### I. *Certificate of Authority*

██ Before reaching the merits of the parties' dispute, the Court must address defendant's contention that plaintiff is not entitled under the Georgia Business Corporation Code to maintain this action because it is a foreign corporation doing business in Georgia without having first obtained a certificate of authority from the Secretary of State. Section 14–2–310 of the Official Code of Georgia provides in pertinent part: "No foreign corporation shall have the right to transact business in this state until it shall have procured a certificate of authority to do so from the Secretary of State ...." Section 14–2–331 further provides in pertinent part: "No foreign corporation that under this chapter is required to obtain a certificate of authority shall be permitted to maintain any action, suit, or proceeding in any court of this state unless before commencement of the action it shall have obtained such a certificate."

It is undisputed by the parties that plaintiff is involved in the real estate business in Georgia. Plaintiff acquired a portfolio of loans originally made by James T. Barnes & Company, which maintained an office in Atlanta, through the Barnes Mortgage Investment Trust, which is a predecessor of the present plaintiff. Plaintiff also now owns a 56-lot subdivision in Conyers, Georgia, and some 75 lots remaining in a subdivision called Nowlin Estates in Cherokee County, as well as the 129-lot Allatoona Crossings Subdivision in Bartow County

where the disputed mobile home is now located. Plaintiff has sold the Allatoona Crossings property twice, and its executive vice-president makes regular trips to Georgia on its business. Defendant contends that plaintiff's efforts in the development and sale of properties in Georgia are sufficient to constitute the transaction of business within the meaning of O.C.G.A. § 14–2–310.

Plaintiff contends, however, that all its activities in Georgia fall within one or more of the express exceptions to the certificate requirement. Section 14–2–310(b) provides in pertinent part:

> Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business in this state, for the purpose of qualification under this chapter, solely by reason of carrying on in this state any one or more of the following activities:
>
> .　.　.　.　.
>
> (5) Effecting sales through independent contractors;
>
> .　.　.　.　.
>
> (7) Making loans or creating or acquiring evidences of debt, mortgages, or liens on real or personal property, or recording same;
>
> (8) Securing or collecting debts or enforcing any rights in property securing the same; . . . .

On the undisputed facts concerning plaintiff's activities in Georgia, as set out in the affidavit of plaintiff's vice-president, Mr. Anthony Pieroni, and briefly summarized above, it is clear that all of plaintiff's business activities in Georgia are within the above enumerated exceptions to the general requirement that a foreign corporation obtain a certificate of authority to transact business in the state. Accordingly, defend-

ant's contention in this regard is without merit, and the Court will proceed to the merits of the parties' dispute.

## II. *Fixture*

The central question in this case, which is determinative of the parties' respective claims, is whether the mobile home that is the subject of this litigation became a fixture to realty on or about September 5, 1981, when it was originally placed on Lot 17H in the Allatoona Crossings Subdivision. Plaintiff's claim rests entirely upon its contention that the mobile home became a part of the real estate at that time and thus subject to its security interest in the property.[1] If this threshold question is decided adversely to plaintiff, then the Court need not address any of the parties' further contentions.

Under Georgia law, "[a]nything which is intended to remain permanently in its place even if it is not actually attached to the land is a fixture which constitutes a part of the realty and passes with it." O.C.G.A. § 44–1–6(a). Defendant correctly points out that the determination of whether a particular piece of personalty has become a fixture requires analysis of three distinct factors.

First, the Court must consider the degree of physical attachment and removability of the article: "wherever the article can be removed without essential injury to the freehold, or the article itself, it is a chattel; otherwise, it is a fixture." *Wade v. Johnston*, 25 Ga. 331, 336 (1858). Second, and even more important, is the intention of the parties with respect to the article's status:

> [I]t is clear that the difficulty or ease of the removal of property from the premises is not determinative of its status as a fixture *vel non*.

---

1. The Court does not understand plaintiff to argue that it has any interest in the mobile home by virtue of the UCC–1 financing statement covering all personal property of J. Bl'ask, Inc., delivered to or situated on the property described in its security deed. In any case, such an argument would be without merit since, as

defendant points out, (1) the description of the collateral contained in the financing statement would not cover the mobile home; (2) no value was given by plaintiff for an interest in the collateral; and (3) J. Bl'ask, Inc., never had any rights in the mobile home. *See* U.C.C. § 9–203(1), O.C.G.A. § 11–9–203(1).

The determination of whether or not an object has become a fixture is generally governed by the intent of the parties....

*In re Janmar, Inc.,* 4 B.R. 4, 9 (Bkrtcy.N. D.Ga.1979). Finally, a third factor that must be considered is whether the requisite unity of title between the personalty and the realty was present at the time the article allegedly became a fixture:

[T]o constitute a fixture there must be annexation to the realty, together with unity of title and ownership of the realty and thing affixed. When the ownership of the land is in one person and of the thing affixed to it is in another, and in its nature it is capable of severance without injury to the former, the fixture can not, in contemplation of law, become a part of the land, but must necessarily remain distinct property to be used and dealt with as personal estate.

*Holland Furnace Co. v. Lowe,* 172 Ga. App. 815, 823, 159 S.E. 277 (1931).

■ The question of whether an article has become a part of the realty is generally one of ultimate fact for the jury. *Sawyer v. Foremost Dairy Products, Inc.,* 176 Ga. 854, 169 S.E. 115 (1933). However, as the Court's analysis below of the three pertinent factors indicates, the undisputed facts already in evidence in the instant case establish as a matter of law that the subject mobile home did not become a fixture when it was placed on Lot 17H in September 1981.

First of all, as to the degree of physical attachment of the mobile home to the real estate, Mr. Robert G. Barlow, agent for the dealer who sold the home to Mr. Haddon, testified at his deposition that when he visited the home in September 1982, the halves of the double-wide unit were joined together and installed as such units are always set up in mobile home parks. That is, they were mounted on blocks, with the tongues, axles and tires still in place underneath and with no permanent foundation around it. Barlow deposition at 16.

■ Virgil Chumley, who occupied the home under purported authority from Ho-

mac after it was abandoned by Mr. Haddon, testified that when he first moved in there was sufficient "daylight" underneath the home for someone to crawl underneath and disconnect the water and septic lines. The electricity was still run into the home from a temporary pole as at a construction site. Chumley deposition at 16–18. To move the home it would have been necessary only to detach the tie-down straps from the frames of the units and from the corkscrew-like anchors screwed into the ground under them. After the two units were separated and jacked up so that the piers on which they were resting could be disassembled, the units would have then been lowered onto their wheels and towed away. *Id.* at 12–15.

Moreover, it is significant that the concrete blocks composing the piers were not mortared together but merely assembled on top of sixteen-inch square pads of concrete placed in the ground underneath the units. *Id.* Thus they could be disassembled and loaded directly onto a truck, leaving only the pads to be pried out of the earth. After the first rain filled in the marks left by the pads and the tie-down anchors, only the utility stubs would remain to mark the spot where the mobile home had been located. In sum, the undisputed facts show that the mobile home could be removed "without essential injury to the freehold, or the article itself." *Wade v. Johnston, supra,* at 336.

Turning to the question of intent, it is clear that at no relevant time did any party in interest intend for the mobile home to become a fixture and thus part of the real estate on which it was situated. At the time the mobile home was placed on the land in question, the interested parties included (1) the then owner of the home, Estates Mobile Home Sales; (2) the manufacturer, All American of Ashburn, Inc., which retained a security interest in the home; and (3) Mr. Haddon, who would later sign an agreement to repay a loan secured by the home, as well as a waiver and consent form specifically stating his intention that the home would remain per-

sonalty "notwithstanding any annexation to the real estate." Defendant Fort Wayne also became an interested party when it reviewed Mr. Haddon's retail installment contract and security agreement, as well as his waiver and consent form, prior to its purchase of the contract and security agreement on October 13, 1981.

There is no evidence in the record from which a reasonable person could infer that any of these parties intended the mobile home to become a part of the real estate on which it was situated. On the contrary, the only evidence of the parties' intent in this regard is the waiver and consent form executed by Mr. Haddon expressing the intent that the home should remain personalty.[2] Thus the Court concludes as a matter of law that all interested parties intended the mobile home to remain personalty.

Finally, analysis of the third relevant factor, the unity of title and ownership of the realty and the thing affixed, also indicates that the mobile home could not have become a fixture when first placed on the subject property. At that time title to the realty was in Mr. Haddon, while title to the mobile home remained in Estates Mobile Home Sales. Only on October 5, 1981, when Mr. Haddon executed the retail installment contract and security agreement with Estates did title to the mobile home rest in Mr. Haddon. But plaintiff's claim rests on its contention that the home was *already* a part of the realty by this time, so that Mr. Haddon's contemporaneous execution of the waiver and consent form, stating his intent that the home would remain personalty, could not affect its previously vested rights. The undisputed facts show, however, that the requisite unity of title of the realty and the mobile home occurred almost simultaneously with Mr. Haddon's

declaration that the mobile home would remain personalty.

Accordingly, for the above stated reasons the Court concludes that the mobile home never became a fixture to the realty covered by plaintiff's security deed, and that plaintiff therefore has no rights in the mobile home. Plaintiff's motion for summary judgment is therefore DENIED, and defendant's motion for summary judgment as to plaintiff's complaint is GRANTED.

### III. *Conversion*

By way of counterclaim defendant seeks to recover damages and attorney's fees for plaintiff's alleged conversion of the mobile home. Although plaintiff has filed an answer denying the material allegations of defendant's counterclaim, plaintiff has not controverted any of the record evidence submitted by defendant in support of its claim, nor has it addressed this point in its briefs.

■ "Under Georgia law a conversion is 'the unauthorized assumption and exercise of the right of ownership over personal property belonging to another which is contrary to the owner's right.'" *Swish Mfg. Southeast v. Manhattan Fire & Marine Ins. Co.*, 675 F.2d 1218, 1219 (11th Cir. 1982) (*quoting Shaw v. Wheat Street Baptist Church*, 141 Ga.App. 883, 234 S.E.2d 711, 713 (1977)). It is immaterial that the wrongful dominion over another's property is exercised in good faith without knowledge of the true owner's title. *Lovinger v. Hix Green Buick Co.*, 110 Ga.App. 698, 140 S.E.2d 83 (1964).

■ The undisputed facts in the instant case show that on August 23, 1982, plaintiff wrote defendant denying that defendant had any interest in the mobile home and indicating that any efforts at reposses-

---

**2.** Plaintiff contends that the intent expressed in the waiver and consent form is not controlling because that form was executed *after* the home was placed on the property and thus after its rights had attached under the security deed it held from J. Bl'ask, Inc. This argument, however, begs the question, because plaintiff's rights under the security deed attached to the mobile home when it was placed on the property *only if*

the home in fact became a fixture at that time. Plaintiff's argument thus assumes the answer to the very question that is at issue. Furthermore, although the waiver and consent was not actually executed until after the home was placed on the subject property, it may nevertheless be considered evidence of the parties' intent at that prior time.

sion would be met with resistance. Plaintiff thus clearly assumed and exercised a right of ownership over the mobile home that, as the Court has determined above, was contrary to defendant's right of possession. The Court therefore agrees with defendant that the undisputed facts establish that there was a conversion of the mobile home by plaintiff no later than August 23, 1982, for which damages are recoverable. Accordingly, plaintiff's motion for summary judgment on defendant's counterclaim is DENIED, and defendant's motion for summary judgment on its counterclaim is GRANTED.

■ As to damages recoverable by defendant on its counterclaim for conversion, O.C.G.A. § 44–12–151 provides:

In an action to recover personal property, the plaintiff may elect:

(1) To accept an alternative verdict for the property or for its value;

(2) To demand a verdict for the damages alone;

(3) To demand a verdict for the property alone and its hire, if any.

It shall be the duty of the court to instruct the jury to render the verdict as the plaintiff elects.

Where the plaintiff elects to take a money verdict,

he may recover the value of the property at the date of the conversion, with interest from that date, or he may recover the value of the property at the date of the conversion, with a reasonable hire from that date to the date of the trial, if the property is of a character that hire may be recovered.

*Douglas Motor Co. v. Watson,* 68 Ga.App. 335, 337, 22 S.E.2d 766 (1942); *see also, Rose City Foods, Inc. v. Bank of Thomas County,* 207 Ga. 477, 62 S.E.2d 145 (1950). In its counterclaim in the instant case, defendant prays for a judgment in the amount of $25,236.00, the value of the mobile home at the time of conversion,[3] plus interest *or* hire on the mobile home from

the date of its conversion. Accordingly, before the appropriate amount of damages recoverable by defendant can be determined, defendant must choose between interest or hire from the date of conversion as the measure of its damages.

■ Defendant also seeks to recover an award of reasonable attorney's fees, apparently pursuant to O.C.G.A. § 13–6–11, which provides:

The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith in making the contract, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

A defendant, however, may not avail himself of this section in order to recover his attorney's fees by way of counterclaim. *Tyler v. Borland,* 157 Ga.App. 332, 277 S.E.2d 325 (1981); *White v. Watson Enterprises, Inc.,* 129 Ga.App. 203, 199 S.E.2d 357 (1973). Nevertheless, § 13–6–11 "should ... be read to permit any party prosecuting a viable, independent claim to recover attorney fees whenever the enumerated statutory criteria are met." *Ballenger Corp. v. Dresco Mechanical Contractors,* 156 Ga.App. 425, 431, 274 S.E.2d 786 (1980). Thus defendant is not barred from recovering litigation expenses incurred in prosecuting its counterclaim.

■ On the undisputed facts in this case, the Court finds no evidence to support a claim that plaintiff acted in bad faith, was stubbornly litigious, or put defendant to unnecessary trouble or expense. Plaintiff's claim of ownership of the mobile home was clearly based on its good faith belief that the home had become a fixture to the real estate on which it had foreclosed, thus entitling it to possession. Thus there existed a genuine dispute or "bona fide controversy" between the parties as to

---

**3.** The affidavit of Robert G. Graf, defendant's Vice President and Liaison Serving Officer, indicates that the value of the home on August 23, 1982, was $25,362.00. The figure stated in defendant's prayer for relief is presumably a typographical error.

ownership of the mobile home. Under these circumstances, defendant is not entitled to an award of attorney's fees. *See, e.g., Bayliner Marine Corp. v. Prance,* 159 Ga.App. 456, 283 S.E.2d 676 (1981).

## SUMMARY

In sum, plaintiff's motion for summary judgment on its complaint and defendant's counterclaim is DENIED, and defendant's motion for summary judgment on plaintiff's complaint, as well as on its counterclaim, is GRANTED. The amount of damages to be recovered by defendant is yet to be determined, and defendant is ORDERED to inform the Court within 20 days of the date of this order of its election as to the measure of damages and its computation of damages using that measure. Plaintiff shall have 20 days thereafter to file its objections to defendant's computation of damages. If there are any factual disputes as to the amount of damages, the Court will set the question down for trial before a jury.

## ON MOTION FOR RECONSIDERATION

Plaintiff Homac Incorporated ("Homac") brought this diversity action seeking to enjoin defendant Fort Wayne Mortgage Company ("Fort Wayne") from repossessing a double-wide mobile home located in a subdivision in Bartow County, Georgia. Plaintiff argued that the mobile home was a fixture and became its property in January 1982 when it foreclosed on the security deed on the underlying real estate. Fort Wayne filed an answer denying that the home was a fixture and counterclaimed for conversion. Following a hearing on plaintiff's motion for a temporary restraining order, the parties agreed that defendant would refrain from repossessing the mobile home and they would submit their legal contentions to the Court by way of cross-motions for summary judgment.

On June 1, 1983, the Court entered an order denying plaintiff's motion for summary judgment and granting defendant's motion for summary judgment on the complaint as well as on its counterclaim. De-fendant was given 20 days to inform the Court of its election as to the measure of damages pursuant to O.C.G.A. § 44–12–151, and plaintiff was allowed 20 days thereafter to respond. On June 27, 1983, defendant filed its election under O.C.G.A. § 44–12–151(3) asking to recover the mobile home plus hire of $250.00 per month from the date of conversion. Plaintiff responded on July 26, 1983, by filing a motion for reconsideration of the Court's June 1 order, which asked that the Court reconsider its grant of summary judgment to defendant but did not address the issue of appropriate relief should the Court decline to reconsider its previous order.

Plaintiff contends in its motion for reconsideration that a material issue of fact exists as to whether the mobile home became a fixture. Plaintiff's citation of evidence purportedly showing that the mobile home is "as attached as a mobile home can be attached to the ground" is not persuasive. Even granting that the mobile home is as "attached" as it can be, the undisputed facts still show that the home "can be removed without essential injury to the freehold." Order of June 1, 1983, at 9 (quoting *Wade v. Johnston,* 25 Ga. 331, 336 (1858)). Furthermore, plaintiff's reliance on Mr. Branan's statement that the home was "a permanent residence in the subdivision" is misplaced. Mr. Branan owned no interest in the mobile home at the time of his statement; any expression of his intent is therefore irrelevant to the question whether the home became a fixture.

Accordingly, it still appearing to the Court that the undisputed facts establish as a matter of law that the mobile home never became a fixture to the real estate on which it was placed, plaintiff's motion for reconsideration is DENIED.

The Court now turns to the question of defendant's remedy for plaintiff's conversion of the mobile home. Since plaintiff has not objected either to defendant's election for a return of the property plus hire, nor to the amount of hire requested, it is hereby ORDERED that plaintiff surrender the subject mobile home to defendant at a

time to be agreed on by the parties, but in no case more than 60 days from the date of this order, and that defendant recover of plaintiff the sum of $250.00 per month from August 23, 1982, to the date defendant recovers possession of the mobile home. The Clerk is DIRECTED to enter a judgment accordingly.

In sum, plaintiff's motion for reconsideration is DENIED; plaintiff is ORDERED to surrender possession of the mobile home to defendant; and the Clerk is DIRECTED to enter a judgment against plaintiff and in favor of defendant for $250.00 per month from August 23, 1982, to the date the mobile home is returned to defendant.