In the Matter of GEORGIA STEEL, INC., d/b/a Eastern Crane & Equipment, d/b/a Plate Services, d/b/a Georgia Structurals, and d/b/a Quickwork, Debtor.

J. Coleman TIDWELL, Trustee, Plaintiff,

Tri-State Machinery Company, Inc., Intervenor,

v.

Margaret C. SLOCUMB, as Trustee for Robert T. Slocumb, John T. Slocumb, William Ashley Slocumb, Liesl Paige Slocumb, Jennifer Lynne Slocumb, and Burke L. Slocumb, III; and Burke L. Slocumb, Jr., Defendants.

Bankruptcy No. 81–50966.
Adv. No. 84–5052.

United States Bankruptcy Court, M.D. Georgia, Macon Division.

March 30, 1987.

Thomas C. James, III, Robert C. Norman, Jr., Jones, Cork & Miller, Macon, Ga., for Margaret C. Slocumb.

William H. Larsen, John T. McGoldrick, Jr., Martin, Snow, Grant & Napier, Macon, Ga., for Tri-State Machinery Co., Inc.

ROBERT F. HERSHNER, Jr., Chief Judge.

### STATEMENT OF CASE

On September 3, 1981, Georgia Steel, Inc., d/b/a Eastern Crane & Equipment, d/b/a Plate Services, d/b/a Georgia Structurals, and d/b/a Quickwork, Debtor, filed a petition under Chapter 11 of the United States Bankruptcy Code. On October 29, 1982, Debtor's Chapter 11 case was converted by the Court to Chapter 7 of the United States Bankruptcy Code, and J. Coleman Tidwell, Trustee, was appointed trustee of Debtor's bankruptcy estate.

On July 2, 1984, the Trustee filed a complaint to avoid certain transfers of property Debtor made to Margaret C. Slocumb, as trustee for Robert Edward Slocumb, John T. Slocumb, William Ashley Slocumb, Liesl Paige Slocumb, Jennifer Lynne Slocumb, and Burke L. Slocumb, III, and Burke L. Slocumb, Jr., Defendants.[1] Tri-State Machinery Company, Inc., Plaintiff, filed a motion to intervene was a plaintiff in this adversary proceeding on April 10, 1985. After a hearing was held on the motion, the Court, on April 10, 1985, granted Plaintiff's motion to intervene as a plaintiff. In its complaint filed as an intervening plaintiff on April 10, 1985, Plaintiff asserts a valid and enforceable interest in a certain SS-200A Motorola Radio Transmission Tower superior to any interest of the Trustee or Defendants.

On May 8, 1985, the parties submitted a pretrial order to the Court, and the Court signed an order on November 26, 1985, nunc pro tunc for May 9, 1985, making the pretrial order the final pretrial order in this adversary proceeding.[2] On September 6,

---

1. Under certain trust instruments, Mrs. Slocumb was named as the trustee for Robert Edward Slocumb, John T. Slocumb, William Ashley Slocumb, Liesl Paige Slocumb, Jennifer Lynne Slocumb, and Burke L. Slocumb, III, all of whom are her children. The Court will hereinafter refer to these trusts as the Slocumb trusts.

2. On May 9, 1985, a pretrial conference was held. The Court notes that through oversight, it

1985, the Trustee filed a "Motion for Approval of Compromise and Settlement of Claims" pursuant to Bankruptcy Rule 9019.[3] The Court signed a consent order on November 21, 1985, approving a compromise and settlement agreement between the Trustee and Defendants. Under the terms of the compromise and settlement agreement, the Trustee transferred any interest that Debtor's bankruptcy estate had in the radio tower to Mrs. Margaret Slocumb (Mrs. Slocumb).

On November 19, 1985, Plaintiff's complaint came on for trial. The Court, having considered the evidence presented and the arguments of counsel, now publishes its findings of fact and conclusions of law.

### FINDINGS OF FACT

In 1973, a SS–200A Motorola Radio Transmission Tower (radio tower) was acquired and erected on Debtor's premises at Fuller Street in Macon, Georgia. A fact greatly in dispute is what entity acquired this radio tower. Plaintiff contends that the evidence supports a finding that Debtor originally acquired the radio tower, but Defendants disagree with this contention. Mrs. Slocumb and Mr. Gilbert Bennett, Debtor's certified public accountant, testified at the trial that the radio tower was originally purchased by Mrs. Lillian Slocumb and transferred for consideration to the Slocumb trusts before Mrs. Lillian Slocumb died. Mr. Burke Slocumb, Jr., testified that Debtor purchased the radio tower through work orders for the Slocumb trusts, and then the Slocumb trusts reimbursed Debtor.

Based upon the pretrial order, Plaintiff objects to any assertion by Defendants that any other entity than Debtor originally acquired the radio tower. Plaintiff contends

that such an assertion raises a new factual allegation previously undisputed which cannot be raised unless the Court allows the pretrial order to be modified to prevent manifest injustice.[4] After the trial, Defendants' counsel moved to amend the pretrial order to raise this factual allegation. Defendants' counsel asserts that the motion to amend should be granted because this factual allegation was unknown to him until shortly before trial, that Plaintiff's counsel was informed of this factual allegation well over one month before trial, and that in a nonjury proceeding, such as the one before the Court, leave to amend should be freely granted.

Rule 16(e) of the Federal Rules of Civil Procedure provides:

(e) *Pretrial Orders.* After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice.

Fed.R.Civ.P. 16(e).[5] The moving party has the burden of establishing such manifest injustice. *Smith v. Ford Motor Co.,* 626 F.2d 784, 795 (10th Cir.1980), *cert. denied,* 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981).

In determining whether a pretrial order should be amended under Rule 16, the Ninth Circuit Court of Appeals noted that:

Pretrial orders play a crucial role in implementing the purposes of the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action." F.R.Civ.P. 1. Unless pretrial orders are honored and

failed to sign the pretrial order, which should have been signed on May 9, 1985.

3. R.Bankr.P. 9019.

4. *See* Fed.R.Civ.P. 16. R.Bankr.P. 7016 makes Fed.R.Civ.P. 16 applicable in bankruptcy adversary proceedings.

5. Although Rule 16 was amended extensively in 1983, the subject matter dealing with pretrial orders remains essentially the same as in the

original rule; it merely is reorganized in subdivision (e) of the newly amended rule.... The standard for modifying the final pretrial conference order remains one of finding that manifest injustice would result, however. 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1526 (Supp.1986). The Court thus concludes that the case law prior to the 1983 amendment is still applicable.

enforced, the objectives of the pretrial conference to simplify issues and avoid unnecessary proof by obtaining admissions of fact will be jeopardized if not entirely nullified. Accordingly, a party need offer no proof at trial as to matters agreed to in the order, nor may a party offer evidence or advance theories at the trial which are not included in the order or which contradict its terms. Disregard of these principles would bring back the days of trial by ambush and discourage timely preparation by the parties for trial.

That is not to say that a pretrial order should not be liberally construed to permit evidence and theories at trial that can fairly be said to be embraced within its language. But particular evidence or theories which are not at least implicitly included in the order are barred unless the order is first "modified to prevent manifest injustice." Fed.R.Civ.P. 16.

*United States v. First National Bank of Circle,* 652 F.2d 882, 886–87 (9th Cir.1981) (footnotes and accompanying citations omitted). *See also Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1335 (8th Cir.1985); *Coastal States Marketing, Inc. v. Hunt,* 694 F.2d 1358, 1369, *reh'g denied,* 699 F.2d 1163 (5th Cir.1983) (trial court has the duty to relieve a party from a pretrial stipulation when it is necessary to avoid manifest injustice or when there is substantial evidence contrary to the stipulation); *Donovan v. Hamm's Drive Inn,* 661 F.2d 316, 317 (5th Cir. Unit A Sept. 1981);[6] *Smith,* 626 F.2d at 795.

After carefully reviewing the pretrial order, the Court concludes that the factual allegation that Defendants wish to add is substantially contrary to the factual allegations set forth in the pretrial order. In the pretrial order, Defendants alleged that the Slocumb trusts acquired ownership of the radio tower from Debtor by operation of law when the radio tower was moved to the Jones County property because at that time it became a fixture upon the realty. If an amendment to the pretrial order is allowed, the issues to be addressed will be substantially different. The Court is persuaded that Plaintiff had knowledge before trial that Defendants would raise this new factual allegation at trial because Plaintiff's counsel received notice from Defendants' counsel over one month before trial that Defendants intended to raise this factual allegation. The Court, however, had no notice of Defendants' intent on the day of trial.

■ After carefully considering the pretrial order, the proposed amendment, and the purposes served by having a pretrial order, the Court concludes that Defendants should not be allowed to amend the pretrial order because they have not proven that such amendment is necessary to prevent manifest injustice. The Court notes that Defendants' counsel knew of this change in the factual allegation prior to trial, but neglected to move to amend the pretrial order. If Defendants' counsel had moved to amend the pretrial order prior to trial, the Court could have amended the pretrial order, removing the old factual allegation and adding the new factual allegation. Thus, the factual issues would have been properly raised before trial, and Plaintiff and the Court would have been fully apprised of the factual allegation. Based upon the evidence presented at trial, the Court further concludes that no manifest injustice would result in denying Defendants' motion because the evidence presented at trial does not support Defendants' new factual allegation.[7] Accordingly, the Court will deny Defendants' motion to amend, and the Court finds that based upon the evidence, the radio tower was originally acquired by Debtor in 1973.

When the radio tower was first erected, it was approximately 200 feet tall. Approximately forty feet was added to the

---

6. Although this United States Bankruptcy Court sits in the Eleventh Circuit, it is bound by all decisions of the former Fifth Circuit handed down prior to the close of its business on September 30, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

7. The Court reaches this conclusion after carefully weighing the demeanor and credibility of the witnesses and their testimony on the issue of the ownership of the radio tower.

radio tower while it was located on Fuller Street. Debtor used the radio tower to communicate between its employees who were often at different jobsites.

On June 1, 1976, Mrs. Slocumb, as trustee for the Slocumb trusts, leased a one-acre tract of land located in Jones County, Georgia, to Debtor. The lease was for a ten-year term with monthly rental payments of $100. The terms of the lease specify that the premises are to be used "for the construction, operation and maintenance of a radio tower." The terms of the lease provide that if Debtor fails to pay the rent when it is due, Mrs. Slocumb may re-enter and take possession of the premises and the structures on it. Mrs. Slocumb testified that when the lease was executed, she intended for the radio tower to remain permanently on the leased premises.

After the lease was executed, Debtor disassembled the radio tower and moved it to the Jones County property in the fall of 1976. The radio tower was reassembled there and additional sections of approximately eighty feet were added to the radio tower to increase its height. The additional sections are not owned by Debtor, but are leased by Debtor pursuant to a lease agreement entered into by Debtor and Leasing Service Corporation on November 4, 1976. After the radio tower was erected, it stood at approximately 340 feet. The radio tower is a self-supporting tower with triangular sides that meet at the top. No guy wires are needed to anchor the radio tower to the ground because each leg is bolted to a concrete slab that extends several feet below the ground and one foot above the ground. The testimony established that the radio tower was assembled and bolted to the ground in the same manner as it was at the Fuller Street location.

John W. McCall, the manager of Macon Communications, testified that his company had installed and maintained radio equipment for the radio tower when it was located at the Fuller Street property and the Jones County property. He testified that this type of radio tower is moved occasionally.

On September 20, 1976, The Citizens and Southern National Bank (C & S Bank) and Debtor executed a security agreement.[8] Under the terms of that security agreement, C & S Bank took a security interest in the following collateral:

> All furniture, fixtures, machinery and equipment of the Debtor of every description used or useful in the conduct of the Debtor's business, now or hereafter existing or acquired, and all accessories, parts and equipment now or hereafter affixed thereto or used in connection therewith.

C & S Bank properly filed a financing statement to perfect its security interest in this collateral on September 22, 1976. C & S Bank filed a continuation of this financing statement on July 1, 1981.

On September 11, 1979, C & S Bank and Debtor entered into a "Term Loan Agreement" in which C & S Bank agreed to lend to Debtor $2,750,000. The loan agreement provides that "[i]t is understood that this Loan Agreement supercedes [sic] and cancels any previous Loan Agreements." The terms of the loan agreement required Debtor to execute a promissory note as evidence of the $2,750,000 loan, which Debtor executed on the same date. Debtor also executed a security agreement on September 11, 1979, granting to C & S Bank a security interest in the following property:

> All equipment of the Debtor of every description used or useful in the conduct of the Debtor's business, now or hereafter existing or acquired, and all accessories, parts and equipment now or hereafter affixed thereto or used in connection therewith.

C & S Bank properly filed a financing statement to perfect its security interest on September 14, 1979.

---

**8.** Plaintiff presented evidence showing that C & S Bank and Debtor had filed a financing statement on January 21, 1974, covering Debtor's existing or after-acquired equipment. Plaintiff, however, did not present a security agreement containing a description of the collateral in conjunction with this financing statement. The Court, therefore, is unable to conclude that C & S Bank held a perfected security interest prior to the September 1976 loan.

Sometime in January of 1979, Debtor made its last rent payment to the Slocumb trusts for the use of the Jones County property on which the radio tower was located. Mrs. Slocumb contends that she then took possession of the Jones County property under the terms of the June 1, 1976, lease agreement.

At the time Debtor filed its bankruptcy petition, C & S Bank asserts that Debtor owed it approximately $2.8 million. C & S Bank's financing statements for 1976 and 1979 were also still in effect. On March 18, 1983, C & S Bank and Plaintiff entered into an agreement under which C & S Bank agreed to sell to Plaintiff its interest in various items of personal property, including certain equipment, machinery, furniture, and office supplies owned by Debtor. The agreement stated that C & S Bank had a first lien on these items and stated in paragraph four that: "This contract shall be subject to the condition that Seller is able to procure a release of all of the property from the Trustee for GSI [Debtor] and is able to obtain the lifting of the automatic stay pursuant to Section 362 of the Bankruptcy Code with respect to all of the property." Among the equipment listed in the agreement is the radio tower. Under the terms of the agreement, C & S Bank was required to deliver a bill of sale conveying its interest in the radio tower to Plaintiff.

On March 23, 1983, C & S Bank executed a bill of sale conveying its interest in the radio tower to Plaintiff. C & S Bank did not transfer to Plaintiff any part of or interest in the promissory notes previously executed by Debtor, evidencing Debtor's indebtedness to C & S Bank and out of which C & S Bank's security interest arose. Before the bill of sale was executed, C & S Bank never foreclosed or attempted to foreclose on its security interest in the radio tower. C & S Bank applied all monies it received from Plaintiff under the March 18, 1983, agreement against Debtor's indebtedness to C & S Bank. This money includes that received from the liquidation of property abandoned to C & S

Bank and the sale of C & S Bank's interest in certain personal property, including the radio tower, to Plaintiff. After application of this amount, Mr. Thomas H. Faulk, an officer at C & S Bank, testified that Debtor's outstanding balance on its loan with C & S Bank is $2,118,802.43. Debtor has no other significant collateral securing its indebtedness to C & S Bank left for C & S Bank to foreclose on or to liquidate.

## CONCLUSIONS OF LAW

■ Defendants have raised several arguments in which they allege that Plaintiff has no legal right to the radio tower. Defendants first assert that under the March 23, 1983, bill of sale, C & S Bank attempted to transfer to Plaintiff a security interest in the radio tower without transferring to Plaintiff any part of the underlying promissory note which the radio tower secured. Defendants assert that such a transfer is ineffective and creates no rights in the transferee.

The terms of the March 18, 1983, agreement provide that:

7. Seller [C & S Bank] represents and warrants as follows:

. . . .

(b) ... Seller agrees to deliver to Purchaser [Plaintiff] at closing a bill of sale conveying all of its interest in the property described on Appendix II [which specifically describes the radio tower] to this agreement, but makes no representation or warranty as to the title conveyed.

Under the bill of sale C & S Bank executed in connection with this agreement, the Court finds that C & S Bank transferred to Plaintiff whatever interest it had in the radio tower. C & S Bank applied the money it received from Plaintiff for the sale of its interest in the radio tower to Debtor's indebtedness to C & S Bank.

The Court is unable to find any Georgia law that requires the simultaneous transfer of an underlying promissory note with the transfer of the security interest. Instead, the Georgia commercial code [9] anticipates

9. The Georgia legislature has adopted the Uni-      form Commercial Code as its commercial code.

and allows a secured party's assignment of all or part of its security interest. *See, e.g.* O.C.G.A. §§ 11–9–206, 11–9–302(2), 11–9–405, 11–9–504 (1982).[10] *See also* Epstein, *Security Transfers by Secured Parties,* 4 Ga.L.Rev. 527, 527 (1970). "An assignee [,however,] has no greater rights than the assignor. When the secured creditor purports to transfer only his security interest, his transferee has only a security interest." 9 R. Anderson, *Anderson on the Uniform Commercial Code* § 9–504:6 (3d 1985) (footnotes and accompanying citations omitted). *See also Healey v. Morgan,* 135 Ga.App. 915, 915, 219 S.E.2d 628, 629 (1975). The Court concludes that this transfer is valid and effective under Georgia law, and through it, Plaintiff received whatever interest C & S Bank had in the radio tower on the date of the transfer.[11]

■ Plaintiff asserts that the transfer by C & S Bank of its interest to Plaintiff under the bill of sale did not violate the automatic stay provisions of the Bankruptcy Code.[12] Section 362(a) of the Bankruptcy Code provides that certain enumerated acts are stayed upon a debtor's filing a bankruptcy petition. *See* 11 U.S.C.A. § 362(a)(1)–(8) (West 1979). "A careful reading of Section 362 reveals that it only applies to the debtor and its property.... Section 362 provides no stay of actions against third parties and their property." *Kash & Karry Wholesale, Inc. v. Citizens & Southern National Bank of South Car-*

*olina (In re Kash & Karry Wholesale, Inc.),* 28 B.R. 66, 72, 10 Bankr.Ct.Dec. 239, 243 (Bankr.D.S.C.1982). *See also Martinson v. First National Bank of Oakes (In re Martinson),* 26 B.R. 648, 653, 10 Bankr. Ct.Dec. 163, 166 (D.N.D.1983), *rev'd on other grounds,* 731 F.2d 543 (8th Cir.1984). Whatever interest C & S Bank has in the radio tower is its property and not property of Debtor or Debtor's bankruptcy estate.[13] The Court finds that the automatic stay provisions of the Bankruptcy Code do not prohibit a creditor of a debtor from transferring any interest or claim it might have against the debtor's bankruptcy estate to a third party. Such a transfer merely substitutes the party that holds the interest or claim against the debtor's bankruptcy estate, and such transfer does not serve to increase or decrease the interest or claim the party asserts against the debtor's bankruptcy estate. The Court thus concludes that C & S Bank's transfer of its interest to Plaintiff under the bill of sale did not violate the automatic stay provisions of the Bankruptcy Code.

Having determined that C & S Bank conveyed whatever interest it had in the radio tower to Plaintiff, the next issue for the Court to determine is what C & S Bank's interest was. The Court finds that on the date the bill of sale was executed, C & S Bank had a perfected security interest in Debtor's equipment. C & S Bank's securi-

---

The Court will hereinafter refer to the Georgia commercial code as the Uniform Commercial Code. *See* O.C.G.A. § 11–1–101 (1982); *Citizens Bank v. Ansley,* 467 F.Supp. 51 (M.D.Ga.), *aff'd,* 604 F.2d 669 (5th Cir.1979).

**10.** Except for those situations governed by O.C. G.A. § 11–2–210 (1982) and O.C.G.A. § 11–9–402 (1982), a right of action directly or indirectly involving a right of property is assignable. O.C. G.A. § 44–12–24 (1982). Also, "personalty to which the owner has a right of possession in the future or a right of immediate possession which is being wrongfully withheld" is assignable. O.C.G.A. § 44–12–20 (1982). *See also Anderson v. Burnham (In re Burnham),* 12 B.R. 286, 293 (Bankr.N.D.Ga.1981); *Water Processing Co. v. Toporek,* 158 Ga.App. 502, 503, 280 S.E.2d 901, 902, *rev'd sub nom. on other grounds, Water Processing Co. v. Southern Golf Builders, Inc.,* 248 Ga. 597, 285 S.E.2d 21 (1981).

**11.** The Court is persuaded that Debtor is not subject to liability both from Plaintiff, as the holder of C & S Bank's interest in the radio tower, and from C & S Bank, as the holder of the underlying promissory note. C & S Bank has effectively conveyed any claim or interest it might have to the radio tower to Plaintiff through the bill of sale. Furthermore, to the extent that the radio tower secured the promissory note, C & S Bank has reduced that portion of the promissory note by applying the money it received from the sale of its interest in the radio tower to the promissory note. Plaintiff, therefore, is the only party to the transfer to have any claim or interest remaining in the radio tower. Debtor thus is not subject to double liability.

**12.** *See* 11 U.S.C.A. § 362 (West 1979).

**13.** *See* 11 U.S.C.A. § 541 (West 1979).

ty interest arose from a security agreement executed on September 20, 1976, and perfected by the filing of a financing statement on September 22, 1976. C & S Bank filed a continuation of the financing statement on July 1, 1981.

■ The Court notes that the provisions of the September 11, 1979, term loan agreement state: "It is understood that this Loan Agreement supercedes [sic] and cancels any previous Loan Agreements." The Court is not persuaded that this language cancels the security agreements or financial statements previously executed by the parties, but merely serves to consolidate the previous loan agreements between the parties. Furthermore, section 11–9–404(1) of the Georgia Code [14] requires the secured party to file a termination statement with the filing officer with whom the financing statement is filed, stating that the secured party no longer claims a security interest under the financing statement. O.C.G.A. § 11–9–404(1) (1982). Instead of filing a termination statement, C & S Bank filed a continuation statement on July 1, 1981, continuing the September 22, 1976, financing statement. The Court thus concludes that C & S Bank's security interest, perfected as of September 22, 1976, in Debtor's equipment is still valid and effective.

■ Defendants contend that even if C & S Bank had a perfected security interest in the radio tower, C & S Bank lost its security interest under Georgia Code section 11–9–306(2) [15] because it authorized the disposition and transfer of the radio tower to the Jones County property in 1976. Section 11–9–306(2) of the Georgia Code provides that:

(2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

O.C.G.A. § 11–9–306(2) (1982). In order for this section to apply, the Court must find that C & S Bank authorized a "sale, exchange, or other disposition" of the radio tower by Debtor.

Sale is defined in Georgia Code section 11–2–106(1) as "the passing of title from the seller to the buyer for a price." O.C.G.A. § 11–2–106(1) (1982). See O.C.G.A. § 11–9–105(3) (1982); Weisbart & Co. v. First National Bank of Dalhart, 568 F.2d 391, 394 (5th Cir.1978). As noted by the former Fifth Circuit Court of Appeals in Weisbart & Co., the terms "exchange" and "other disposition" are not defined under the Uniform Commercial Code. 568 F.2d at 395. In Weisbart & Co., the court of appeals found that an "exchange occurs when 'one party passes his property to another and in turn receives from the latter his property without having an agreed value placed on [either].'" Id. (quoting Griswold v. Tucker, 216 S.W.2d 276, 278 (Tex. Civ.App.1948)) (brackets in original). After finding this, the court of appeals applied the canon of statutory construction known as ejusdem generis to the term "other disposition" and stated that:

Employment of the doctrine mandates that "other disposition" refer to a transaction of the same general type as a sale or exchange. Therefore, though "other disposition" cannot technically be characterized as a sale or exchange, at the minimum it must meet the threshold test of these two transactions by effecting a transfer of property. See Barnard v. Barnard, 91 Ga.App. 502, 502–503, 86 S.E.2d 533, 536 (1955) (holding that since the word "sell" means to "divest one's self of all rights and interest in a thing sold," the doctrine of ejusdem generis compels that "exchange" and "dispose" also carry that connotation).

Id. See also Corwin v. RCA Corp. (In re Kittyhawk Television Corp.), 516 F.2d 24 (6th Cir.1975); Black & White Cattle Co. v. Shamrock Farms Co. (In re Black & White Cattle Co.), 46 B.R. 484, 488–89 (Bankr.App. 9th Cir.1984); Lindsey v. Rob-

14. O.C.G.A. § 11–9–404(1) (1982).

15. O.C.G.A. § 11–9–306(2) (1982).

*inson,* 180 Ga. 648, 652, 180 S.E. 106, 108–09 (1935); *Barnard v. Barnard,* 91 Ga. App. 502, 505, 86 S.E.2d 533, 536 (1955). Because the transfer merely constituted a change of location, it was not a "sale, exchange, or other disposition" within the meaning of section 11–9–306(2). Thus, section 11–9–306(2) is inapplicable.

Having determined that Plaintiff took a security interest from C & S Bank in Debtor's equipment, the Court now must determine whether the radio tower constitutes equipment. In addressing this issue, the Court must first determine whether the radio tower is a fixture or personal property. If the radio tower is personal property, the Court then must determine whether the radio tower is equipment. Under the Uniform Commercial Code, goods become fixtures "when they become so related to particular real estate that an interest in them arises under real estate law." O.C.G.A. § 11–9–313(1)(a) (1982). Georgia real estate law provides that "[a]nything which is intended to remain permanently in its place even if it is not actually attached to the land is a fixture which constitutes a part of the realty and passes with it." O.C.G.A. § 44–1–6(a) (1982).

■ Several factors are involved in determining whether property constitutes a fixture under Georgia law. Two important factors are the detachability of the article and the intention of the parties. G. Pindar, *Georgia Real Estate Law and Procedure,* ch. 10 (2d ed. 1979). The language of section 44–1–6(a) indicates that the most important factor is the intention of the parties. *See Homac Inc. v. Fort Wayne Mortgage Co.,* 577 F.Supp. 1065, 1069 (N.D.Ga. 1983); *Brown v. United States,* 512 F.Supp. 24, 25 (N.D.Ga.1980); *Goger v. United States (In re Janmar, Inc.),* 4 B.R. 4, 9, 6 Bankr.Ct.Dec. 385, 388, 1 Collier Bankr.Cas.2d 1051, 1056 (Bankr.N.D.Ga. 1979); *Babson Credit Plan, Inc. v. Cordele Production Credit Association,* 146 Ga.App. 266, 268, 246 S.E.2d 354, 357 (1978). The detachability of the article be-

comes important if the intention of the parties is difficult to discern. In *Wade v. Johnston,* [16] the Georgia Supreme Court held: "Wherever the article can be removed without essential injury to the freehold, or the article itself, it is a chattel; otherwise, it is a fixture." *Wade,* 25 Ga. at 336. However, this rule is limited by the agreement of the parties or custom. *See Homac Inc.,* 577 F.Supp. at 1069; *Armour & Co. v. Block,* 147 Ga. 639, 95 S.E. 228 (1918); G. Pindar, *Georgia Real Estate Law and Procedure* § 10–10 (2d ed. 1979).

■ In the instant case, the intention of the parties is unclear. Ms. Slocumb testified that she intended for the radio tower to remain permanently on the realty. The testimony establishes that Debtor entered into the June 1, 1976, lease agreement in order to put its radio tower on the Jones County property. However, the June 1, 1976, lease agreement between Debtor and Ms. Slocumb was silent on whether the radio tower was a fixture. Because the true intention of the parties is difficult to discern, the Court finds that the determinative factor is the detachability of the radio tower.

The radio tower is bolted to concrete slabs with bolts in each of the radio tower's three legs. No guy wires secure the radio tower. The radio tower apparently can be removed from the realty without damage to the land or to the radio tower, by removing these bolts and disassembling the radio tower. The Court notes that the radio tower has already been removed once when it was removed from the Fuller Street location. Mr. McCall testified that such radio towers are occasionally disassembled and moved.

The Court also notes the case of *Motorola Communications & Electronics, Inc. v. Dale,* [17] in which the Fifth Circuit Court of Appeals held that a similar radio tower was not a fixture under Mississippi law.[18] The tower in *Dale* was described as follows:

---

**16.** 25 Ga. 331 (1858).

**17.** 665 F.2d 771 (5th Cir.1982).

**18.** Mississippi law on fixtures is similar to that of Georgia. *See* 665 F.2d at 773.

[T]he tower is over 400 feet tall. Its base is attached by means of a "pier pin and plate" to a concrete slab measuring ten feet by ten feet and extending eight feet into the ground. Five sets of three guy wires are attached to the tower at the following levels: 60', 140', 220', 300' and 380'. The wires are attached to the ground by anchor rods sunk six feet below the surface at points 146 feet and 230 feet out from the base of the tower. With its anchoring system, the tower occupies 7.96 acres.

665 F.2d at 772. Concerning the detachability of the radio tower, the court of appeals stated: "Despite its size the tower can be removed merely by detaching the bolts and guy wires. The slab on which it stands will remain but no damage will be done to the real estate by disassembling the tower and carting it away." *Id.* at 774 (footnote omitted). The radio tower in *Dale* is larger and attached to the real estate to a greater degree than the radio tower in this case. The Court thus concludes that the radio tower is personal property rather than a fixture.

■ Having determined that the radio tower is personal property, the Court must determine whether it constitutes equipment. Equipment is defined in section 11–9–109(2) of the Georgia Code,[19] which states that something is equipment if it is "used or bought for use primarily in business (including farming or a profession) or by a debtor who is a nonprofit organization or a governmental subdivision or agency or if the goods are not included in the definitions of inventory, farm products, or consumer goods; . . ." O.C.G.A. § 11–9–109(2) (1982). The Court finds that the radio tower was used and bought for use primarily in Debtor's business. Furthermore, Defendants do not allege that the radio tower constitutes inventory, farm products, or consumer goods. Accordingly, the Court holds that the radio tower is equipment. Because the radio tower constitutes equipment, C & S Bank had a perfected security interest in the radio tower which it transferred to Plaintiff under the bill of sale.

Plaintiff's interest in the radio tower is thus superior to any interest Defendants might have to the radio tower based upon Debtor's default under the terms of the June 1, 1976, lease agreement.

An order in accordance with this opinion is attached hereto.

### ORDER

Based upon the attached and foregoing findings of fact and conclusions of law; it is

ORDERED that Tri-State Machinery Company, Inc., Intervenor-Plaintiff, is hereby relieved from the automatic stay of the Bankruptcy Code; and it is further

ORDERED that Tri-State Machinery Company, Inc., Intervenor-Plaintiff, has a superior interest and priority over any claim that Margaret C. Slocumb, as trustee for Robert Edward Slocumb, John T. Slocumb, William Ashley Slocumb, Liesl Paige Slocumb, Jennifer Lynne Slocumb, and Burke L. Slocumb, III, and Burke L. Slocumb, Jr., Defendants, may have to the SS–200A Motorola Radio Transmission Tower; and it is further

ORDERED that this order be entered on the docket on the date set out below.